# STATE EX REL. MINEHAN v. THOMPSON.

(139 N. W. 960.)

**Election on county division — returns — omission of precincts — mandamus to declare result — burden of proof.**

At the general election in 1908 there was submitted to the voters of McLean county three propositions for county division, including that of the proposed county of Stevenson, concerning which the election returns from forty-five only of the fifty-one precincts of McLean county were returned by the precinct election boards to the county auditor, and only such forty-five precincts as were returned were canvassed, abstracted, and certified as to the result of such election by the county canvassing board, who made return that in said forty-five precincts 1,006 votes favored the creation of Stevenson county, with 741 votes against its creation. No return of the votes cast on such county division proposition was ever made or canvassed or included in said return as to the six omitted precincts of Douglas, Turtle Lake, Butte, Roseglen, Whittaker, and Shell Creek; in which six omitted precincts 354 electors voted at said election, sufficient in number to have constituted a majority against county division had they all voted against such division. No proof of the result of the election is in evidence other than the certificate of the canvassing board of the county, showing on its face such omission to canvass these six precincts, and a stipulation of their omission from the returns and canvass, and that 354 electors voted in such six omitted precincts. In this mandamus proceeding, based upon the above facts, regarding which there is no dispute, in which it is sought to compel the county auditor to certify to the secretary of state that a majority of all votes cast in said county at said election on county division was for the creation of Stevenson county, and upon his refusal to so certify, it is *held*:—

(1) It was the duty of the canvassing board of McLean county, under § 673, Rev. Codes 1905, to procure the returns to be made and canvassed from such six omitted precincts.

(2) That the abstract of the vote upon such division proposition, required under § 651, Rev. Codes 1905, shows on its face that it is incomplete, and but a partial canvass of the whole vote cast in the county on such question.

(3) Such returns are prima facie evidence of the precincts canvassed and abstracted by precincts as required by statute; and where it appears on its face to be incomplete, as not including the vote cast in six out of fifty-one precincts in the county, such returns are not prima facie evidence of the result of the election as to all precincts in the county, the proof of the result of an election in forty-five precincts not constituting prima facie proof as to the result of an election held in fifty-one precincts, the whole county of McLean.

24 N. D.—18.

(4) The burden of establishing that county division carried by a majority of all votes cast in said county of McLean at said election is upon the relator, who, by his pleadings and from the nature of the relief asked, must establish such fact before the court can find that a majority existed in favor of such county division proposition.

(5) Prima facie proof as to the result of such an election as to forty-five precincts covered by such abstract of returns by precincts is insufficient to entitle relator to relief, the further burden resting upon him to establish that the actual vote of such six precincts could not in fact change the result of the election as canvassed in said forty-five precincts; and there being no proof whatever of the vote on such question in such omitted precincts, and in which precincts the court will presume some vote was cast in each upon county division, it is impossible to determine that a majority of all votes cast in the whole county were in favor of county division. Accordingly, relator has not met the burden of proof upon him to establish such fact, there being a failure of proof as to what the total vote of the county was upon the proposed county division.

(6) The petition and alternative writ alleging the submission of such question at a general election, and that the returns thereof from each and all of the election boards of all the precincts in the county were made and returned and by the county canvassing board canvassed, with the result thereby determined in favor of such county division, it is proper for a county auditor against whom the proceedings are brought to answer, on behalf of himself and parties interested, and therein put in issue matters alleged in the petition and alternative writ, and allege a failure of returns from a portion of the precincts, a canvass by the board of only a part of all the precincts in the county, and that the abstract of returns as made by the county canvassing board is incomplete, and not a finding of the result of the election in all the precincts of the county, and that county division did not receive a majority of all votes cast at the election in such county on such county division proposition. Such an answer but raises issues of fact properly triable in mandamus; and the abstract of the vote of a portion only of the precincts of such county does not have the force of a certificate of election covering all precincts in said county, or preclude the trial of the issues of fact involved in this mandamus proceeding, and compel the auditor to resort to a statutory contest to determine the actual result of the election.

(7) It was proper to consider, as evidence, stipulated facts as to the number of electors voting at such a general election in the six omitted precincts, as additional proof that the returns as certified were incomplete, and as being admissible under the burden of proof upon relator under the pleadings; and also as showing facts upon which might be based the exercise of discretion by the court in the granting or denial of the writ, the right to which is not a strict legal right, but discretionary to the extent that the court should not issue the writ until the relator fully prove himself entitled to the redress sought by the

writ. To determine the relator's right to the writ the trial court could receive testimony, even though a prima facie right thereto had been established.

(8) Section 168 of the state Constitution, providing that "all changes in the boundaries of organized counties before taking effect shall be submitted to the electors of the county or counties to be affected thereby, at a general election, and be adopted by a majority of all the legal votes cast in each county at such election," makes it the duty of the court to know that a proposed county division has been so approved by such majority vote of all electors in the county voting upon the question, before the court can hold county division to have legally carried and issue the writ of mandamus asked for. Under this constitutional provision, all doubt as to the result of the election must be resolved against a relator seeking to obtain a judicial determination that a new county has been so created.

(9) To entitle relator to the writ, the burden is upon him to establish that a majority of all votes cast in said county on said proposition at the election was in favor of such county division; and no proof having been made in this case as to the result of such election in McLean county, there is a failure of proof; and it is ordered that the alternative writ and order for peremptory writ, and the peremptory writ thereon issued, be vacated and quashed and these proceedings dismissed.

Opinion filed November 23, 1912. On petition for rehearing February 10, 1913.

Appeal by defendant from a judgment of the District Court for McLean County, *Crawford*, J., in a proceeding to determine the result of an election on the division of McLean county.

Reversed and dismissed.

*H. F. O'Hare, Geo. R. Robbins,* and *Geo. A. Bangs,* for respondent.

*McCulloch & Nelson,* and *Engerud, Holt, & Frame,* for appellant.

Goss, J. This proceeding by mandamus was brought in district court to determine the results of an election on the division of the county of McLean. Relator asks that the existence of the proposed county of Stevenson be declared and established, and the county auditor be required to issue and forward to the secretary of state a certificate certifying such county division carried by a majority of all votes cast at the election had thereon in 1908, and certifying to boundaries and name of said county. This action has twice before been before this court, in various forms. 19 N. D. 804, 124 N. W. 701; and as an incident thereto the original proceeding of State ex rel. Miller v. Miller, 21 N. D. 324, 131 N. W. 282. See also State ex rel. Minehan v.

Wing, 18 N. D. 242, 119 N. W. 944.  The first-named proceeding involved matters of pleading and practice, and whether the return of the alternative writ of mandamus in any of the many matters therein presented amounted to a defense in the light of the stipulated facts of the case accompanying the pleadings on appeal, resulting in a reversal of the judgment that a peremptory writ issue and the remanding for further proceedings to be had in the district court.   Thereafter, and before trial on the merits, the auditor, disregarding the pendency of the action to determine the propriety of the issuance of the certificate certifying that the election had been carried by a majority vote, and the boundaries and name of the county, issued such certificate, forwarded the same to the secretary of state, who in turn notified the governor thereof, who thereupon appointed county commissioners for the county of Stevenson.   Proceedings in the organization of this county were there stayed summarily by the original writ of this court, issued on relation of the attorney general in State ex rel. Miller v. Miller, and upon final hearing all proceedings, including said certificate so issued, were vacated, and the *status quo* reinstated pending trial in the district court of this case now here on appeal from that court's decision, granting the peremptory writ, and in effect thereby adjudging legal the foundation for the organization of said Stevenson county.   The case is now before us on the merits under the issues joined by the petition and alternative writ and the return thereto of the auditor.

The alternative writ, following substantially the petition, briefly recited, shows the right of relator to be such, the boundaries of the county, the preliminary steps to the election on the creation of Stevenson county, the submission of such propositions to the voters of the county of McLean at the general election in 1908, the notices of election on said proposition and the election held thereon, and "that the said judges and inspectors of said general election in each and all of the precincts of said county made a statement in duplicate on blanks provided for that purpose, showing therein the number of votes cast for and against the formation of the said new county of Stevenson; and certified the same to be correct, and the same were duly subscribed and filed in the office of the county auditor of said McLean county, with the returns of such general election, according to the statute in such case made and provided; that thereafter, on or about the 16th day of November, A. D. 1908, the can-

vassing board of said McLean county met pursuant to and as directed to and required by statute, and, after taking the usual oath of office, opened and publicly canvassed the returns theretofore made to the said county auditor of said McLean county of the said general election hereinbefore referred to, and especially the returns of the votes cast by the voters of said McLean county upon the formation of said new county of Stevenson; and that the said canvassing board of said McLean county found that there were 1,006 votes cast 'for new county' and 741 votes cast 'against new county' on the question of the formation of said new county of Stevenson," "by the voters of said McLean county at said general election in said county of McLean; and thereupon the said canvassing board of said McLean county canvassed and abstracted said votes, and so certified the same" "in like manner as the votes are canvassed and the returns made as in the case of the election of members of the legislative assembly of the state of North Dakota."

Then follow averments that the county auditor refuses to certify and make his certificate showing the result of said general election, and the formation and the boundaries and name of said county, and transmit the same to the secretary of state, as required by § 2330, Rev. Codes 1905, as amended by chap. 62 of the Session Laws of North Dakota of 1907; and closes with a command to so certify or make return of the reasons for refusal so to do.

It will be noticed that the foregoing portion of the writ, literally copied, alleges that the official returns by the election boards "in each and all of the precincts of said county" were made to the county auditor, and canvassed and abstracted by the canvassing board of said county, who "found that there were 1,006 votes cast for new county and 741 votes cast against new county;" and that thereupon "the said canvassing board of said McLean county canvassed and abstracted said votes and so certified the same." Bear in mind, then, relator specifically pleads that the election boards in each and all the precincts in McLean county made returns on said county division question, as provided by law, to the county auditor, and said returns were, by the county canvassing board, opened, canvassed, and abstracted. The auditor answers, among other alleged defenses, that out of the fifty-one election precincts in the county of McLean no returns to the county auditor were ever made by the election boards in six of said precincts, designated by name, and

that the board of canvassers of McLean county never canvassed the votes on county division cast in said six precincts, and that the aggregate number of electors who voted in said precincts at said election was 354, more than sufficient to have changed the alleged election result had they voted on said question, and said vote had been returned and canvassed and included in the abstracts of votes, as should have been done. That "it was held and determined by said canvassing board that the proposition to form Stevenson county was lost;" "that the county commissioners of McLean county and the county officers thereof all understood and believed in good faith that under the laws of this state the said proposition to create Stevenson county had been defeated;" "all of which was well known to the relator herein and to all other persons in the same situation as relator and interested in the question of the formation of Stevenson county." "That this defendant and many other citizens in said McLean county would have contested said election with respect to the vote on Stevenson county had they known or been informed in proper time that it was asserted or claimed that said vote was, on the face of the returns, sufficient to authorize the formation of Stevenson county; but this defendant and other citizens generally who were adverse to Stevenson county in good faith believed and were led to believe by the silence and nonaction of the supporters of Stevenson county that it was conceded that the Stevenson county proposition was defeated, and therefore did not institute any contest."

Then follow allegations of insufficient notice; dissemination of misleading information acted upon by the voters, causing them to refrain from voting against the proposition, under the belief that a failure to vote was in legal effect a vote against the formation of the county; that 3,600 votes were cast in said county at said general election, at which two other county division propositions were submitted, one carrying by a majority of all votes cast at the election, and thereby creating what is now the organized county of Sheridan; that one county division proposition so submitted overlapped, in territory embraced, both of the other two, so that an affirmative vote on all three should not be counted and was in effect a negative vote, and that as to this county of Stevenson, fifty-two such votes are included in the alleged majority therefor; and that, inasmuch as a majority of the affirmative votes for Stevenson county did not exceed one half of all votes cast at the election on all county

division propositions then submitted, said county could not be created under § 168 of the Constitution and under the statutes regulative of county division.

Of the many interesting questions thus arising, but one, and that conclusive of results of said election, need be considered. This arises upon the pleadings, and the sufficiency of the proof, and the law applicable thereunder concerning whether a legal and sufficient canvass and abstract therefrom of votes was ever made by the county canvassing board. The issue of fact regarding this is presented by the pleadings, to which reference has heretofore been made. Bear in mind the alternative writ and petition therefor constitute the complaint. High, Extr. Legal Rem. 451; 26 Cyc. 470. Also that the burden of proof is on relator, as in ordinary actions and proceedings, to make out a prima facie case by proof of the necessary averments of his pleadings. High, Extr. Legal Rem. §§ 448–451; State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834. "On an application for a mandamus, the burden of proof is governed by the general rule that the party holding the affirmative of the issue must establish his allegations by a preponderance of the evidence. The relator must prove himself entitled substantially to every claim and to all the redress which he seeks in his writ." 26 Cyc. 476. How is this burden upon plaintiff met under the facts, which, by the way, are in such particular stipulated? Unless Exhibit D, hereinafter mentioned, makes prima facie proof of the right to relief, the following stipulation effectually answers this question: "It is stipulated that no returns on the vote on any of the questions of county division appearing on the ballot (a ballot containing all three county division propositions) were ever made to the board of county canvassers from the following precincts of McLean county, *viz.,* Butte, Douglas, Roseglen, Whittaker, Shell Creek, and Turtle Lake; and the aggregate number of electors who voted in said precincts at said election was 354." The precincts named are the same as those designated in respondent's answer as the precincts from which no returns were ever made or canvassed. The language of this stipulation is carefully chosen that it may be so explicit and certain as to leave nothing to intendment, interpretation, explanation, or presumption. It establishes "to a certain intent in every particular" the facts pleaded by answer, and that but forty-five out of fifty-one precincts were in fact canvassed by

the board and included in the abstract of votes. In connection with this stipulation, there was offered and received Exhibit D, such purported original abstract of the votes cast in forty-six of the fifty-one precincts of McLean county on county division matters, from which it appears that no votes are abstracted as to precincts of McLean county numbered 4, 7, 9, 33, 42, and 50, and with totals as so abstracted for and against Stevenson county of 1,006 and 811, respectively, exclusive of said numbered precincts. And accompanying said abstract is the following certificate:

"Total number of voters who voted at the general election held November 3d, A. D. 1908, 3,600.

"Votes cast for governor, 3,437.

"Votes cast on Stevenson county, 1,817.

"Votes cast on Sheridan county, 2,674.

"Total vote cast on division ballots, 2,764."

To which the auditor affixed his certificate, required by § 651, that such constitutes a copy of the abstract of votes cast by such precincts on said county division.

And it was stipulated that Exhibit D, offered in evidence, "is a true and correct copy of the original abstract of votes as made and prepared by the proper officers at the different elections enumerated therein and upon the division questions enumerated, which were held in the different election precincts shown by said abstract in the county of McLean at the time and places therein stated," subject to objection as to relevancy and materiality.

The question before us, then, under this phase of the case, is whether a canvass of but forty-five precincts out of fifty-one in a county, and where there were sufficient electors voting on other questions in the omitted six precincts that, had they voted against the creation of the new county, the negative votes would have exceeded the votes for the creation of such county, while with such precincts omitted a majority as abstracted appears from forty-five precincts out of fifty-one in favor of the creation of the county, is the new county created under the constitutional and statutory provisions relative thereto. If this question must be answered in the negative, this action is thereby determined against relator.

Under the burden of proof, arises the question of whether, by the re-

ception in evidence of Exhibit D, relator has made prima facie proof in his favor of the result of the election. Must this abstract of votes be given the same force and effect as though it was an ordinary certificate of election declaring an election result, such being the office of the usual certificate of election?

Our statute, notwithstanding § 2329, is silent on the necessity of the execution and filing of the equivalent of a certificate of election on the canvass of a county division election, unless it be that either the abstract by precincts on the canvass, required under § 651, or the certificate of formation of the new county, embracing not only the fact of the result of the election but the territorial boundaries and contents and name of the new county, is in effect the certificate of such an election. Considered in connection with § 688, as to contests in county-seat and county-division matters, providing the statutory contest must be begun "within thirty days after the result of such vote is canvassed," instead of from the date of issuance of any certificate or return, it would appear that no certificate of election, strictly speaking, is provided for, and that the auditor's certificate, mentioned in § 2330, as amended by chapter 62 of the Session Laws of 1907, because required by special statute with otherwise no statute requiring aught but an abstract of votes by precincts, constitutes such certificate. A certificate of election is usually issued as a separate instrument from the returns of the board of canvassers, and § 651, the governing statute here, makes the distinction between the certificate of election and the canvasser's returns, by requiring "the county auditor immediately to make out a certificate of election to each of the persons having the highest number of votes for county and precinct offices respectively, and to deliver such certificate to the person entitled thereto on his making application to the county auditor therefor;" and on state-wide questions that said official "shall make a certified copy of each abstract and forward it to the secretary of state" as the returns from such county on such state-wide proposition; and the state board of canvassers, after the canvass made of such "certified abstracts of votes from the several counties," as provided by § 656, issues the certificate of result or the certificate of election according to the fact, as provided in §§ 661 et seq. Throughout all these provisions the distinction between returns of the canvassing board and certificates of election is clearly drawn. Undoubtedly, however,.

the return in whatever form, whether it be a certified abstract or instead a formal certificate of election, "makes a prima facie case of the correctness of the matters therein contained." 15 Cyc. 386. But such a return does not necessarily prevent the determination by mandamus of the result of such election and of the legal consequences of the returns so certified. In matters of office contest between two claimants for office, both claiming under an election, it is the rule that where the return of the canvassing board is made upon a full canvass of proper election returns, the board's determination is conclusive in mandamus as to matters which by statute the board was authorized to certify. Such is the holding in State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231. But nowhere can authority be found that a return or certificate of election, showing as here, apparent from Exhibit D, that upon its face it is based upon a partial and incomplete canvass of official precinct returns, is conclusive or even prima facie evidence of the result of such election. It is also true that an election return, or certificate of election, issued upon full and substantial compliance with prior statutory duty, cannot be impeached in mandamus proceedings; nor can the title to office, if prima facie or regular, be overthrown in mandamus. But these questions are without this case. This issue is whether, in this mandamus action to determine the issuance of a writ to create a new county, the court is bound by a return appearing on its face to have omitted the canvassing of six precincts out of fifty-one, and this in the face of a constitutional provision requiring a majority of all votes cast at the election on the proposition to be in favor of the creation of Stevenson county before this writ can issue. We may concede, then, respondent's contention, that a complete abstract by this board of canvassers would be prima facie evidence of what it may contain, including the totals of the vote cast on this county division proposition. But that does not establish that a partial canvass, as is apparent from the face of these returns, is prima facie evidence of anything more than the returns of the vote of that portion of the whole county therein tabulated and certified. It is apparent that the board of canvassers has but partially performed its duty, and neglected to perform the duty cast upon it by § 673, wherein it was required to procure and canvass the official returns from the six precincts uncanvassed and omitted; and adjournment before so doing amounted to a noncompliance

with the statute, and the certificate issued cannot be other than it purports to be, the incomplete returns of duty but partially performed. That it might by mandamus have been compelled in proper season to have reconvened and to procure the returns omitted, and canvass the same, is the great weight of authority. "If the canvassers neglect or refuse without sufficient reason to meet and canvass the votes, they may be compelled to do so by mandamus, and if they perform their duty in part only, or in any other illegal and unwarranted manner, they may be compelled to perform it in full or in a proper and legal manner." Mechem, Pub. Off. § 210, and cases cited; State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834. In both of these cases the opinion is partially based upon the assumption that, under certain circumstances, it is proper in mandamus to compel reconvening of a board of canvassers and the performance of its duty, the issue being whether, under the facts considered, the writ for that purpose would issue; and this notwithstanding that in the last-cited case a certificate of election declaratory of results of the election had been previously regularly issued and filed. To the same effect, see Merrill, Mandamus, § 182, that "the fact that a canvassing board has already declared the result and issued a certificate of election to another person is no adequate return to an alternative writ of mandamus to canvass the returns properly, and declare the proper result when the returns have been improperly counted or improperly rejected," citing many authorities. To the same effect is Spelling, Extr. Relief, § 1557, reading: "Mandamus is not the proper remedy for determining the result of a disputed election, though it may lie, in a proper case, to compel an officer to certify the result of the election. . . . Where the board of canvassers of an election have canvassed but a portion of the returns and issued a certificate of election, mandamus will lie to compel them to reassemble and canvass the returns correctly, and issue a certificate to the one found elected from the whole returns, notwithstanding the person holding the certificate of election has qualified and entered upon the discharge of the duties of the office." Among the authorities cited by this author is Barnes v. Gottschalk, 3 Mo. App. 111, an action in prohibition to prevent a subordinate court compelling by mandamus the issuance of a certificate by the mayor of St. Louis, certifying the passage by a majority vote at

an election of a new charter for said city. We take the following from page 120 of that opinion: "It is insisted that mandamus cannot be employed to accomplish the purposes of a contested election. Granted; but here are no such purposes. A contested election can have no existence until after the result has been declared and the certificate awarded by the proper ministerial officer. This, in the present case, has never been done. The proceeding is not to investigate the truth of a declared result, but to compel an official declaration of result where none has been made. Such a process lies precisely within the legitimate operation of the writ of mandamus." Relator began this proceeding in mandamus. The defendant has made reply, not contesting an election, but in effect putting relator to his proof as to the election results. Relator then offers this incomplete abstract as sufficient proof to meet his burden assumed by his pleadings and the issues joined, and asks the court to presume it to be prima facie evidence of the whole election, when on its face it does not purport to be such, but only partial returns, a partial performance of duty by the canvassing board, and evidences an obvious disregard by it of the provisions of § 673.

In no sense can this partial abstract be held to have the force of a completed one, as the partial performance of an official duty cannot be said to be the full performance of it. Lewis v. Marshall County, 16 Kan. 102, 22 Am. Rep. 275; State ex rel. Byers v. Bailey, 7 Iowa, 390; McCrary, Elections, § 269. This authority says: "It is the duty of the canvassers to canvass all the returns, and they as truly fail to discharge this duty by canvassing only a part and refusing to canvass the others, as by refusing to canvass any." "The canvass is a ministerial act, and part performance is no more a discharge of the duty enjoined than no performance." See also § 272 of the same work, where, speaking of a legislative contest wherein the returns of one county out of five were missing, with the certificate of election signed by the canvassing officers of four out of the five counties, quite similar to the case before us, we find the following comment: "The case did not come properly within the rule that the certificate of the majority of the board is the certificate of the board; for while it is true, ordinarily, that less than the whole number may make a valid certificate in such case, it must be upon a canvass of the whole vote of the district. If a part of the vote is omitted, and the certificate does no more than to show that a

canvass of part of the vote cast shows the election of a particular person, it is not even prima facie evidence, because *non constat* that a canvass of the whole vote would produce the same result." Under this authority the return of this canvassing board from forty-five out of fifty-one precincts is not prima facie evidence that the same would be the result of a canvass of the whole vote. After the reception in evidence of this proof as to these forty-five precincts, it was incumbent upon relator to at least prove that had all six omitted precincts been canvassed the result would have been the same. Instead he stipulated that 354 electors voted in said precincts at said election, and there rested his case, leaving the court in ignorance of the conclusive question of whether a majority of all votes cast on the county division proposition was in favor of the creation of the new county, and leaving an utter failure of proof on this question.

But to avoid this, the only conclusion, relator asks that we assume that no votes were cast upon county division in the six unreturned precincts. But if any presumption is to be indulged in it is settled that it must be the contrary presumption of fact, and to the effect that there were votes cast upon this proposition in said omitted precincts. State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706, from page 711 of which we quote: "The reasonable presumption is that . . . votes were cast pro and con thereon in all of the election precincts of the county. We cannot disregard the fact raised by this presumption, for no other reason than that no certified statement of the number of votes cast for and against the proposition was made by the precinct election officers." We see no reason for overruling part of the basis of that decision. The presumption, then, is that votes were cast in said six precincts; and in the face of such presumption we cannot assume the returns not containing them to be either prima facie or any evidence of the actual result of said election in the fifty-one precincts in McLean county.

But another all-sufficient reason exists as to why testimony should be taken, touching the result of this election, upon which depends the issuance or denial of the writ prayed for. The relator must prove himself entitled to "the redress which he seeks in his writ." 25 Cyc. 476. We may grant the impossible, and assume that upon the reception in evidence of this incomplete abstract of returns a prima facie case

of results of said election was made out, and that prima facie relator had then and there met the burden of proof upon him, and that such testimony would have been sufficient upon which the court might in its discretion have issued a writ as prayed for. Assume, also, that such burden had been so met as to the total vote cast in said county on such proposition. Still it does not follow that relator would be entitled to his writ certifying the creation of this new county, as the granting of the writ is a matter not of strict legal right, but discretionary, and concerning which, under this assumed state of the proof, the court, with the answer interposed as here, could have even then exacted further proof of the facts disclosing the actual result of this election, and could have insisted upon the proof of the total number of votes for and against the proposition. And this over any objection that could be urged that the court was in effect permitting a contest of the election. We quote from State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834. "We hold that the writ [of mandamus, and prayed for in a county-seat controversy] is not one of right, but one to be granted, as a general rule, in the discretion of the court; and that, in determining how his discretion should be exercised, that court to which application is made may take testimony; and that it is not an abuse of discretion to deny the writ when it is shown that its issuance would avail nothing to the relators." This effectually answers the question of the right of the court to require proof of the propositions here made, and after the canvassing board's returns were in evidence, even though the result of the testimony so received and supplementing the returns should overthrow them to the extent of causing the court to adjudge them insufficient and deny the writ. The evidence here so required was admissible for such purpose, and discloses absolute uncertainty as to what the result of said election on county division was in the whole of said county, hence rendering it impossible to grant the writ prayed for and showing conclusively an abuse of discretion in the granting of the writ in the face of such failure of proof.

But yet the greatest reason of all still exists why this writ should be denied relator. To grant the writ, in effect, is to create a new county. This cannot be done under § 168 of our state Constitution without a strict compliance with the letter and the spirit of that fundamental law. It provides the proof to be here exacted as a condition precedent to the

relief sought, by the following language: "All changes in the boundaries of organized counties, before taking effect, shall be submitted to the electors of the county or counties to be affected thereby at a general election, and be adopted by a majority of all of the legal votes cast in each county at such election." This has been construed, as to majority, to mean a majority of all votes cast on county division. See State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360. We do not here determine whether to create this new county a majority of all votes cast on all county division propositions submittted at said election was necessary under such constitutional provision, but most certainly a majority of all votes cast upon the Stevenson county proposition must favor such division before it may be judicially determined as carried within the meaning of the constitutional provision quoted. A parallel case is Rich v. State Canvassers, 100 Mich. 453, 59 N. W. 181, where the respondent board failed to procure proper returns from one county in the state, concerning the passage of a proposed constitutional amendment, and officially declared the same carried without the returns from said county. In a mandamus action against the board to reconvene, procure returns, and canvass the vote of this county, notwithstanding such certificate of election certifying the result of the election as the passage of the amendment, the court says: "It is to be noted that under § 1 of art. 20 of the Constitution of the state, no amendment can become a part of the Constitution until ratified by a vote of the people. One prerequisite is equally as essential as the other. The amendment must first receive the requisite majority in the legislature and afterwards be adopted by the requisite vote. The question here involved is not whether the court will, in a collateral proceeding go into proofs to ascertain whether the board of canvassers has committed an error, but whether in a direct proceeding, when it appears that a palpable mistake has been committed, due in part to an omission of duty and in part to a fraudulent and criminal alteration of the returns upon which the determination of the board is based, the board itself may not right the wrong committed and may not be required to do so. . . . But the consequences of holding that the determination of the board of canvassers is forever conclusive, and that no matter how flagrant the fraud perpetrated upon the board or how gross its own neglect of duty, the determination is to stand for all time and an alleged amendment become

a part of the organic law which it can be demonstrated beyond peradventure never received the requisite vote from the electors, are such that we should adopt such construction of the statute only when convinced that no other is open. The able argument of counsel for the attorney general has failed to convince us that the action of the board is not subject to direction by the court by its process of mandamus." And the same holds true here in this case. No one can tell the fact of whether in the fifty-one precincts in McLean county a majority vote duly canvassed would show the approval of the people of that county on this proposed county division. This is all-sufficient upon which to deny the writ. If the constitutional provision can be circumvented and virtually set aside by any such presumptions as here urged from a canvass of a portion of the vote, it is the equivalent of saying that the Constitution does not mean what it says when it requires the adoption of the proposition "by a majority of all the legal votes cast in each county at such election."

Several other questions briefed by counsel might be passed upon, but those already discussed fully decide this case against relator. Upon the relator is cast the burden of making the proof of the result of this election, as to which result it is impossible to determine, there being a failure of proof thereon and concerning a matter in which § 168 of our state Constitution requires unquestionable proof of a majority favoring county division before relator is entitled to this writ.

It is ordered that the alternative writ, the order for and the judgment entered in the District Court granting a peremptory writ requiring appellant to issue the certificate of the division of McLean county and the territorial limits, contents and name of the proposed new county of Stevenson, be in all things quashed and set aside, and judgment directed to be entered dismissing this proceeding on the merits.

SPALDING, Ch. J. (concurring specially). I concur in the result reached by my associates in the foregoing opinion. I do so, however, solely for the reason that this case was before this court in State ex rel. Minehan v. Meyers, 19 N. D. 804, 124 N. W. 701, on an appeal from an order of the district court striking out portions of defendant's return or answer. After due consideration it was there held that the trial court erred in its action, for the reason that the portions of the answer stricken out stated defenses. Among the portions so stricken

out by the trial court and reinstated by this court were those defenses now relied upon in this proceeding. That is to say, the pleadings now before us are in all material respects the same as in the Meyers Case. The action is the same, the only difference being that a newly elected county auditor has been substituted as a party in place of the one holding that office, and defendant, when the Meyers Case was decided. I say the defenses are the same as to matters before us on the present appeal. It is true that in the Meyers Case we held that the publication of the notice of election on county division was invalid. That was held by reason of the counsel on both sides submitting the case on the mistaken view that one section of the statute applied, and subsequently, as indicated in State ex rel. Miller v. Miller, 21 N. D. 324, 131 N. W. 282, the same counsel in one phase of the same litigation appeared before us and called our attention to the fact that they had inadvertently relied upon the wrong section, and agreed that as to that part of the decision it should not be binding in this litigation. Hence that defense is eliminated, but other defenses remain the same, and the evidence sustains the defenses so pleaded. This being true the decision in the Meyers Case, except as it relates to the sufficiency of the publication of the notice, is controlling in this litigation, and all this long, tedious, and perplexing litigation has been conducted on the strength of that decision. I am by no means certain that I should now concur in the holdings of that case if the same questions were being considered in the first instance. While it is not stated in the opinion of Judge Goss that other cases should be overruled, it seems to me that it in fact, if concurred in by a majority of the court, would overrule numerous well-considered authorities, including State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360, and State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834, and perhaps others. If it is the intention to overrule these authorities, I think it should be so stated in the opinion and thereby prevent the confusion which necessarily follows whenever an opinion is in effect overruled without so stating.

If the Meyers Case is to be ignored, I am of the opinion that, in view of the defective returns, this court would be amply justified in disregarding the technical question as to whether the official abstract of votes

24 N. D.—19.

meets the burden of proof cast upon the relator, and remanding the case to the district court, with directions to take evidence as to the vote, pro and con, actually cast in the missing precincts.   It cannot be questioned that, setting technical considerations aside, this method would approach most nearly to meting out justice to the respective parties of any that could be adopted.   If the election officials of the missing precincts made no returns, the canvassing board was woefully derelict in its duty if it did not require such returns to be made, or, if made, amended so as to show the votes on this question.   The law makes specific provision for securing or amending such returns.   It is now too late for that board to do this; but the court could, without doubt, supply the deficiency by the method suggested.   The new county should not be formed if it did not have a majority of the votes cast on the question; on the other hand, it has a right to be organized if it received such majority.   The record before us leaves this question in doubt, and no party could complain if the truth were ascertained, whatever the result. Ample authority is vested in this court, both by statute and precedent, to so dispose of this appeal.   But inasmuch as a majority of the court will not concur in the manifestly equitable and just disposition of this proceeding which I suggest, I rest my assent wholly on the authority of State ex rel. Minehan v. Meyers, 19 N. D. 804, 124 N. W. 701, without expressing any opinion on the different phases of the law announced in the opinion of Judge Goss, although satisfied that many of the authorities cited are not in point on any question before us.

BRUCE, J. (concurring specially).   I concur in the result of the opinion filed by Mr. Justice Goss.   I do not, however, wish to be understood as concurring in, or expressing an opinion upon, all of the propositions discussed either in the majority or dissenting opinions in this case.   Much depends upon the conclusions that are to be derived from the former cases of State ex rel. Minehan v. Meyers, 19 N. D. 804, 124 N. W. 701; State ex rel. Miller v. Miller, 21 N. D. 324, 131 N. W. 282; State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706, and State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360, and as to what was the actual intent of the court in these cases.   As I was not a member of this court at the time of the writing of the opinions therein,

I cannot personally speak as to such actual intention, and prefer to leave that to my associates.

I am, however, clearly satisfied as to two basic propositions, and those are, that there is no showing in this case that the proposition for the creation of the new county of Stevenson was carried either by a majority of the voters who voted upon that proposition, or by a majority vote of the electors who voted upon the question of county division generally. As I understand § 168 of the Constitution, a majority of those who voted upon the question of county division, generally, was necessary; but be that as it may, it is quite clear to me that there is not even a showing that a majority of those who voted upon the particular proposition was obtained. I do not agree with Mr. Justice Burke in his conclusion as to the nature and effect of the certified copy of the report of the board of canvassers. Mr. Justice Burke seems to be of the opinion that the record shows that such canvassers actually reported that the total number of votes cast upon the proposition was 1,817. He almost goes so far as to intimate that that report should be conclusive in mandamus proceedings. I, on the other hand, am of the opinion that the showing is merely that 1,817 votes were returned by some of the precincts, and that there were still outstanding other precincts from which no returns had been received, and the vote from which had, therefore, not been counted by the canvassers. According to the case of State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706, the presumption is that votes were cast pro and con on this proposition in these precincts. To me, therefore, the record shows that there were a number of votes outstanding and uncounted. If this be so, the case is taken out of the rule laid down in State ex. rel Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231, and State ex rel. Davis v. Willis, supra. There being no proof in the record as to how the vote stood in these unreported precincts, the presumption merely being that there was a vote, there is no showing that the proposition was carried by a majority vote, even of those who voted upon the particular Stevenson county proposition. The stipulation that 356 votes were cast, generally, in the omitted precincts, tends also to strengthen this conclusion.

I am quite clear that the relator has not proved his case, and personally I am of the opinion that § 168 of the Constitution requires a majority vote of all those who voted at the particular election upon the

county division propositions generally, and is not confined to a majority of those who voted on the Stevenson county plan.    15 Cyc. 390; State ex rel. Peacock v. Osakis, 112 Minn. 365, 128 N. W. 295; State ex rel. Cope v. Foraker, 46 Ohio St. 677, 6 L.R.A. 422, 23 N. E. 491; People v. Berkeley, 102 Cal. 298, 23 L.R.A. 838, 36 Pac. 591; Stebbins v. Superior Ct. Judge, 108 Mich. 693, 66 N. W. 594; Hogg v. Baker, 17 Ky. L. Rep. 577, 31 S. W. 726; Enyart v. Hanover Twp. 25 Ohio St. 618; State ex rel. Hocknell v. Roper, 46 Neb. 724, 61 N. W. 753. Such latter conclusion, however, is not necessary to my decision in this case.

BURKE, J. (dissenting).    The first proposition to which I desire to call the attention of those persons interested in this case is that the views of Judge Goss in no manner constitute an opinion of this court, having been concurred in by but two of the five members.    The only matter in which three members of the court agree is that the county of Stevenson did not receive a majority of the votes cast at the election. Although the syllabus has but two of the five members of this court back of it, and is repudiated by three members, yet it is set up as "by the court."    The bar will probably realize, however, that a court holding that 1,006 votes are too few to be a majority of 1,817 will not agree that two is a majority of five.

With the conclusion reached by the majority I wish to take issue, and at the start will say that the views of Judge Goss do not, in my opinion, correctly state the facts.    To my mind the issues are simple and the conclusion plain.    There was an election in 1908 upon the creation of Stevenson county.    The canvassing board of McLean county, under their oaths of office, made a return that there was 1,817 votes cast upon Stevenson county, of which 1,006 were for the new county and 811 against.    This statement is stipulated to be true by the attorneys, and a certified copy thereof is in evidence.    This finding of the said canvassing board has never been questioned by contest, as required by §§ 693–695, Rev. Codes 1905, and after the time wherein such contest must be taken the said finding became conclusive upon all persons concerned.    However, the county auditor of McLean county neglected and refused to make the proper returns to the secretary of state as required by § 2330, Rev. Codes 1905, and this action was brought in

mandamus to compel him to do so. To this action the county auditor had a right to reply, showing that the election itself was void, or that the law upon which it was founded was unconstitutional, or that the canvassing board was not even a *de facto* body, or that the returns made were forgeries; but he had no right to reply that the vote was not correctly canvassed, for two very good reasons: First, the time for contest had gone by, the ballots were already destroyed, and no bond or notice had been given, and leave of court had not been had; second, the auditor was not a party interested in the election, and his attack was therefore collateral. It is very plain to me, therefore, that the statement of the canvassing board must prevail as to the figures returned by it. The views of Judge Goss would probably be appropriate if someone had started a contest, but this was not done.

As a matter of fact the auditor did attack the election as void, and succeeded in getting this court to hold with him once (see State ex rel. Minehan v. Meyers, 19 N. D. 804, 124 N. W. 701), but in another appeal it was shown that the court was wrong (see State ex rel. Miller v. Miller, 21 N. D. 324, 131 N. W. 282) and it is now conceded by all members of this court that the election itself was valid. As a second ground of attack upon the new county the auditor asserted and proved that six of the fifty-one precincts of McLean county made no return upon this proposition. It does not appear that any votes, either for or against the new county, were cast in said missing precincts, although it is admitted that, upon other matters, there were cast enough votes that, had they all voted against Stevenson county, it would have been defeated. This attack and this proof are, to my mind, excluded because not brought by contest, and such is the holding of this court in at least seven cases (State ex rel. Dakota Hail Asso. v. Carey, 2 N. D. 36, 49 N. W. 164; State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025; State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958; State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234; State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; Dean v. Dimmick, 18 N. D. 397, 122 N. W. 245; Chandler v. Starling, 19 N. D. 144, 122 N. W. 198), and is also the views taken by the recognized authorities. See 26 Cyc. 257; 19 Am. & Eng. Enc. Law, 2d ed. 769; McCrary, Elections, 358–599; Spelling, Extra. Rem. 55–60; Merrill, Mandamus, 180, and the hundreds of cases therein cited.

The gist of these decisions being that, while the abstract of votes (or certificate of election) stands, it is binding as to what appears upon its face. 15· Cyc. 387, says: "A certificate of election, whether rightfully or wrongfully given by the board of canvassers, confers upon the person holding it the prima facie right to the office, and must stand until it is set aside by a competent tribunal in a proceeding in which its validity may be directly inquired into. It is conclusive in all cases in which its validity is not drawn directly in question." And at 26 Cyc. page 255, it is said: "It is a general rule that title to office cannot be adjudicated on an application for mandamus." And, again, at 15 Cyc. 386: "So, where some . . . proposition is submitted to the vote of the people, it is the duty of the canvassers to issue a certificate declaring the result of the election. This certificate or statement carries with it a like force as a certificate of election furnished to the successful candidate for office, and it makes a prima facie case of the correctness of the matters therein contained."

Indeed so well settled is the law that my associates seek to avoid its consequences by saying that no complete canvass of the votes was had, and that therefore there is no certificate of the canvassing board in existence. This they assert in the teeth of the stipulation of the attorneys that Exhibit D is a true and correct copy of the original abstract of votes made by the proper officers, and in the teeth of the certified copy of the said abstract of votes duly stipulated into the record. To me it seems that the trouble with Judge Goss is that he has gotten the idea that certain parts of Exhibit D relative to the total number of votes cast in the county is a certificate made by the county auditor, and not by the canvassing board. He is led into this error, because the auditor happened to be the official who made the certified copy of the record of the canvassing board. As a matter of fact, however, Exhibit D is stipulated by the attorneys to be a correct copy of the returns made by the canvassing board, and contains the following extracts: "Total number of voters who voted at the general election on November 3d, 1908, 3,600. Vote cast for governor 3,437; vote cast on *Stevenson county 1,817.*" If my associates just comprehend that this is a statement made by the canvassing board, who are all acting under their oath of office, I think the fallacy of their position would become apparent to them. When it is remembered that this is a solemn statement or finding of the

canvassing board, and that it has never been attacked by contest, and has become a finality binding upon all parties concerned, it will be seen that the relator has proven by the only competent evidence in existence that Stevenson county has received a majority of the votes cast upon that proposition. In the case of State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231, a somewhat similar situation arises. Some 258 votes cast by women for the office of superintendent of schools of Walsh county were omitted from the official canvass made by the precinct officers, and it was positively shown that had these votes been counted it would have changed the result, yet because a contest was not taken this court refused relief, and says: "The board is required to act upon the official returns only, and not upon matters lying outside of them. If the returns are false,—and in this case it would seem they were, through the innocent mistake of the precinct officers in not including the women's vote in their official statement of the election, they could have been overturned by appropriate proceedings to contest the election. But until the prima facie character of the official returns is destroyed in proper judicial proceedings, they determine the result."

For the sake of argument, we can admit that six precincts did not make any returns to the canvassing board. That fact does not appear upon the face of the returns, but is proven by evidence which was only admissible in a contest case. The canvassing board had certified that there were 1,006 votes for Stevenson county,—811 against it, and a total vote of 1,817 cast thereon. This negatives any presumption which might otherwise arise that there were in fact votes cast upon this proposition in the six missing precincts. Thus, it will be seen that an attempt has been made here to change this mandamus suit into a contest suit without the necessity of having any person start such contest. Sections 693–697, Rev. Codes 1905, sets out the procedure necessary to contest the election of a new county as follows: "In any county where there is a vote for . . . changing the county lines thereof, any elector of such county on leave of the district court may contest the validity of such election . . . such elector shall give notice in writing of such contest to the county commissioners or a majority of them, of the county in which such vote was taken, by serving a notice . . . within thirty days after the result of such vote is canvassed. Such notice shall specify the grounds of such contest, and shall be filed with

the clerk of the district court within ten days after the service thereof
.  .  .  the county commissioners of such county shall appear and defend such contests, but in case they fail to appear and defend the same any elector of such county may at any time before such trial, on leave of the court, appear and defend the same.  .  .  ." Sec. 695: "Any person bringing a contest under the provisions of this article must, before bringing the same, furnish good and sufficient surety for costs, as provided in the Code of Civil Procedure." It stands to reason that where the legislature has made such full and careful provisions for contesting the election, that it was not intended that these provisions might be ignored in a mandamus suit. While the defendant might show any facts attacking the validity of the election itself at any seasonable time, yet any attack upon the figures found by the canvassing board must be by contest. The case of State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958, relied upon by defendant, does not bear out his contentions. In that case the figures returned by the canvassing board were not attacked, but it was claimed they showed upon their face that Hillsboro did not have two thirds of the votes polled. There is a vast difference between attacking the election itself and the returns of said election. In the case at bar the defendant, if he did not wish to accept the figures of the canvassing board, had several remedies. He could have mandamused the board to reconvene and count the missing precincts, or he could contest the election. In either case he would have had to appear ex rel. the state, so that all of the citizens of his bailiwick would be bound by an adverse decision. See Dean v. Dimmick, 18 N. D. 397, 122 N. W. 245; State ex rel. Dakota Hail Asso. v. Carey, 2 N. D. 36, 49 N. W. 164. In either event he would have to act promptly while the ballots were still preserved. He would have to give proper notice to all parties interested, and put up a bond for costs. Having done none of these things, and the time for contest having expired, and the ballots having been destroyed as contemplated by law, and a fair trial being no longer possible, then the defendant must be presumed to have accepted the return of the canvassing board as final. In Chandler v. Starling, 19 N. D. 144, 122 N. W. 198, this court said: "It is proper to try in mandamus proceedings all questions relating to the prima facie title." In State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025, it is stated: "The defendant,

a private citizen, has no status which entitles him to become the champion of the state;" and again in the same case: "In our view this investigation is inhibited by the rule that forbids the trial of title by mandamus."

It will thus be seen that Judge Goss's idea that this action is brought to determine the result of an election, which is found in the opening sentence of his opinion, is entirely erroneous. This action was not brought to determine the result of the election. It was brought to compel the county auditor to do a ministerial duty after the voters had determined the election.

Judge Bruce has not concurred in the reasons given by Judge Goss. for holding that no canvass had been made of the votes in McLean county; but he joins in the reversal in this case for the reason, which he alone maintains, that it was not shown that Stevenson county had received a majority of all the votes cast upon all county division propositions. It is conceded there were presented to the voters at the same election three different propositions to create new counties, and that upon the three different propositions there were more than 2,012 votes cast. This, however, is but another phase of the old contention that a proposition of this kind must receive the affirmative vote of a majority of all the voters who attend the polls, whether they vote upon the proposition or not; and I did not know it was longer open to debate in the United States or North Dakota; since practically every court in the United States that has passed upon the question at all has held that, where language like our Constitution and statute is used, the majority of all votes cast means a majority of all votes cast upon the proposition under discussion. In North Dakota alone the proposition has been passed upon at least six times. State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958; State ex rel. Larabee v. Barnes, 3 N. D. 319, 55 N. W. 883; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360; State ex rel. Davis v. Fabrick, 18 N. D. 402, 121 N. W. 65; Fitzmaurice v. Willis, 20 N. D. 372, 127 N. W. 95. Practically all of the cases in the United States are collected and digested in a note at page 478, vol. 22 L.R.A.(N.S.), which note surely must have escaped the attention of brother Bruce. From these cases it appears to be well settled that when a voter refuses or neglects to cast his vote upon a proposition of this kind, that he is presumed to have delegated

to the voters who do vote all of his rights of choice. In most of these cases it is merely claimed that the proposition must have a majority of votes cast upon governor, or some other single proposition. Brother Bruce goes even further, and says that this proposition must not only have a majority of the votes which may be cast for governor, but also a majority of all votes cast upon three different propositions. If his views are correct, instead of the voter who has expressed no choice on Stevenson county being deemed to have waived his right to vote, he is held to have voted against Stevenson county.

The decision of the majority in this case in fact holds that 1,006 votes is not a majority of 1,817 votes, and these are the mathematics used to disfranchise the entire electorate of one of the largest counties in our state, and I respectfully decline to become a party to such a procedure.

## On Petition for Rehearing.

Goss, J. It is urged on rehearing that, because written exceptions were not taken and filed to the findings of fact and conclusions of law, the same are conclusive, and the court cannot examine a stipulated record, embodied in a settled statement of the case, in which specifications of error of fact and of law challenge both the conclusions and the findings. Such may have been the common law, but we construe the statutes as abrogating any necessity for taking and filing exceptions in findings in appeals such as this. Section 7053, Rev. Codes 1905, defines an exception as "an objection upon a matter of law to a decision made either before or after judgment by a court in an action or proceeding." This definition confines an exception to "an objection upon a matter of law," and manifestly an objection that a finding is not in accord with or supported by the facts disclosed by the evidence cannot amount to an exception. Under the statutory definition of an exception, there cannot be such a thing, in a legal sense, as an exception to a finding of fact, on the ground that it is contrary to the evidence; and this alone is sufficient to show that no exceptions to findings of fact can be taken or are necessary. For example, § 992 of the New York Code of Civil Procedure was in such respect nearly in the language of § 7053, Rev. Codes 1905. And it was held that the

effect of said § 992 was to obviate the necessity of excepting to findings in order to review the evidence upon which the findings were based. But § 993 of the New York Code further provided that when the assignment of error was that the finding had no evidence to support it, then it was a ruling upon a question of law, and it was necessary that there be an exception to raise such question of law; but exceptions were not necessary where there was some evidence to support the findings, and where the error assigned was that the finding was against the weight of the evidence. Meade v. Smith, 28 Hun, 639; Hill v. White, 46 App. Div. 360, 61 N. Y. Supp. 515; Porter v. Smith, 35 Hun, 118, affirmed in 107 N. Y. 531, 14 N. E. 446; Bullock v. Bemis, 3 N. Y. Supp. 390; Mooney v. Fagan, 4 N. Y. Supp. 21; Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516. But this distinction has not been brought into the practice in this state, as we have no section parallel to § 993, creating such distinction. An exception cannot, and need not, be taken to a finding.

Then again, under § 7053, "the exception must be taken at the time the decision is made, except as provided in § 7054," which reads: "The verdict of the jury, the final decision in an action or proceeding, . . . are deemed to have been excepted to, and the same may be reviewed both as to questions of law and the sufficiency of the evidence upon motion for new trial or upon appeal, as fully as if exception thereto had been expressly taken." Under § 6717 the word "verdict" in § 7054 must include "not only the verdict of a jury, but also the findings upon the facts of a judge or of a referee appointed to determine the issues in a cause." And again, under § 7040, findings and conclusions amount to a decision. It reads: "In giving the decision the facts found and the conclusions must be stated separately; judgment upon the decision must be entered accordingly." So that under the express terms of § 7054, whether the word "verdict" be considered as including findings, the decision mentioned in § 7054 is the findings under § 7040. Exceptions are unnecessary, and, by the terms of the statute, the sufficiency of the evidence may be reviewed "upon appeal as fully as if exception thereto had been expressly taken." We find §§ 7053–7054 coming to us from territorial times, and still remaining the statute of South Dakota as well as of this state. For South Dakota's interpretation in line with the foregoing, see Smith v. Commercial Nat. Bank, 7 S. D. 465, 64

N. W. 529; Lone Tree Ditch Co. v. Rapid City Electric & Gaslight Co. 16 S. D. 451, 93 N. W. 650; Kelly v. Wheeler, 22 S. D. 611, 119 N. W. 995; State ex rel. Koontz v. Brown, 25 S. D. 74, 125 N. W. 294. Companion sections to those of our Code involved are quoted and discussed in these cases. It is plain, therefore, that under our statute an exception can be taken only to errors of law, and then only with respect to matters not mentioned in § 7054, wherein findings and other orders are by statute deemed excepted to. The only condition precedent to review the sufficiency of the evidence to justify the findings is that a statement shall be settled, embodying all the evidence, and contain "a specification of the particulars in which the evidence is alleged to be insufficient to justify the verdict or other decision," as required in § 7058.

Section 7226, prescribing the powers and duties of the supreme court on appeal, is in strict harmony with the foregoing provisions. It provides that upon appeal from a judgment the supreme court may review any intermediate order or determination of the court below "which involves the merits and necessarily affects the judgment, . . . whether the same is excepted to or not;" also errors apparent on the judgment roll itself may be reviewed without exception or a statement of the case; "any question of fact or law, decided upon trials by the court or by a referee, and appearing upon the record properly excepted to in a case in which an exception is necessary, may be reviewed by the supreme court, whether a motion for a new trial was or was not made in the court below,", but excluding jury trials from such review. The appellate court is thus explicitly empowered to review the sufficiency of the evidence to justify findings of fact in cases tried by the court and without a motion for a new trial. There is no necessity for an exception to secure such review, as no exception is provided for, and, strictly speaking, none can be taken to the findings; and this fact is recognized by § 7226 in the language: "Properly excepted to in a case in which an exception is necessary;" stating plainly that an exception is not necessary in certain cases.

Respondent urges that § 7226 was adopted from the Wisconsin statutes, and cites many Wisconsin authorities that findings of fact and conclusions of law cannot be reviewed without exceptions. A comparison of the Wisconsin statute, § 2870 of Sanborn's and Berryman's

Anno. Stats., enacted in its present form in 1860, with our statute, discloses no similarity, but on the contrary that the Wisconsin statute in express terms requires an exception to findings. It reads: "In any trial by the court an exception taken at the trial may be settled as in trials by jury under the preceding section, and either party may except to any findings of fact or conclusions of law in the decision of the court by filing written exceptions with the clerk at any time before the expiration of ten days after service upon him of a written notice of the entry of judgment thereon. All such exceptions may be incorporated in the bill of exceptions which may be thereafter settled." The Wisconsin holdings are none of them in point on our practice under § 7226.

Respondent claims that the finding as to the number of votes cast for and against county division is plead by defendant's answer to have been 1,006 for and 811 against, and that by defendant's answer he has admitted that 1,817 votes were all the votes cast on said proposition in said county at said election. It is true the answer contains the allegation that "out of 3,600 voters voting at said general election, 1,006 votes were cast in favor of the county of Stevenson, and 811 votes were cast against the proposed change; and that upon the question of the proposed changes to be effected in the boundaries of the county of McLean there were 2,700 votes cast; out of which the proposed change for the formation of Stevenson county received 1,006 votes in favor of the formation thereof." This is said in connection with the defense plead, in effect that granting that a majority of the votes cast upon the Stevenson county proposition were cast for the creation of that county, no county division could be had without a majority of all votes cast on all county division propositions favoring the creation of Stevenson county; in which event about 1,800 votes would have had to have been cast for Stevenson county to create it, inasmuch as at the same election the creation of Sheridan county was voted upon. When this paragraph of the answer is considered with the alleged defense in connection with which it is plead, it cannot be said to constitute an admission that 1,817 votes were all that were cast in said county. Especially is this true when we find in the answer the following allegation: "Defendant, further answering, alleges that the entire vote on the question of county division was never returned to or canvassed by the county board of canvassers of McLean county; that although in each of the precincts of

Butte, Douglas, Roseglen, Whitaker, Shell Creek, and Turtle Lake, of the county of McLean, votes were cast on the said question of county division, no return from said precincts of said vote was made to the board of county canvassers, and the aggregate number of electors who voted in said precincts at the said election was 354." This expressly negatives any inference respondent would have drawn to the contrary from the pleadings.

On the trial it was stipulated "that all the requirements of the election law were fully complied with other than as set forth in these stipulated facts." Among the stipulated facts we find it is stipulated that no returns on this county division proposition "were ever made to the board of county canvassers" from the six precincts in question, in which 354 electors voted at said election. Upon this respondent contends that the presumption that "a duty imposed by law has been regularly and duly performed," aided by said stipulation, should compel us to conclude that notwithstanding the stipulated facts as to the returns from these six precincts, all county division ballots cast on this division have been canvassed and returned, and the presumption should be that no ballots were cast in these six precincts upon county division. To reach this conclusion we must ignore stipulated facts that no returns were made from these precincts, and assume to the contrary that returns were made and were counted. The answer pleads exactly what was subsequently stipulated at the trial in this respect; and the stipulation must be taken not only as proof of the facts stipulated, but as a judicial admission made in the course of a trial of the truth of the paragraph of the answer pleading such facts. Certainly a mere presumption of fact, arising from a presumption of duty performed, is overthrown by proof inconsistent with the application of any such presumption.

Respondent labors heavily with the burden of proof. He states that "it is of course elemental that in the first instance the party having the affirmative must assume the burden of proof to establish the essential allegations of his pleadings, that is, to present to the court the facts entitling him to recover." This we agree has the support of reason and authority. He next asserts: "The vital, essential fact necessary for the relator to establish was that the canvassing board ascertained and determined the result, and that the result showed a majority in favor of division." We agree with this assertion. So far we are on common

ground. We differ only as to the method of proof under such assumed burden. The result that the canvassing board was to ascertain and determine was the number of votes cast throughout the county on the county division proposition, not the result of the election, as that is a deduction to be drawn from the facts to be ascertained from the return and abstract of votes of the canvassing board. State ex rel. Sunderall v. McKenzie, 10 N. D. 132, at page 137, 86 N. W. 231. With the burden of proof concededly upon relator to establish the facts from which the conclusion that county division regularly carried at said election must be drawn, he introduces proof claimed by him to be prima facie proof as to returns from and the vote cast in all of the fifty-one precincts in said county; and then stipulates that the proof so offered really covers but forty-five of the precincts of said county, thereby destroying the prima facie force of the documentary proof as to the whole county; but he singularly still maintains, notwithstanding his stipulation and contrary to the facts so stipulated, he has made proof as to the vote of the entire county on such question. Again, apparently realizing that a prima facie case has been made as to only a portion of the county vote, he asks us to indulge in a presumption based upon the presumed regularity of official conduct that the entire county vote is presumed to have been canvassed; to indulge in which presumption we must ignore the above stipulated facts which show no canvass was or could be made of the entire county vote. Under the facts established conclusively by his own stipulation, neither the respondent, nor this court, nor any member thereof, can say that this county division proposition received a majority vote favoring it.

With due deference to the opinions of the dissenting member of this court, Justice Burke, his conclusions must ignore such stipulated facts when he agrees with the contention of respondent concerning and contrary to admitted facts, and is ready to find that this county has been constitutionally created, when the parties stipulate that but less than seven-eighths of the number of precincts in the county have been canvassed, and no proof is offered as to how the 354 voting electors in such omitted precincts voted on this question.

And this leads to a word upon the assertion of counsel for respondent, and the two dissenting justices of this court, that in deciding this case we have overruled much of the established precedent of this state.

The so-called special concurring opinion of the chief justice is placed solely upon the holding in the Meyers Case, in which he joined, and he here intimates doubt as to the correctness of that decision by his statement: "I am by no means certain that I should now concur in the holding in that case, if the same questions were being considered in the first instance." The writer will term his concurring opinion as a dissent. Attention is called also to the following statement contained therein: "While it is not stated in the opinion of Judge Goss that other cases should be overruled, it seems to me that it in fact, if concurred in by a majority of the court, would overrule numerous well-considered authorities, including State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360; and State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834, and perhaps others. If it is the intention to overrule these authorities, I think it should be so stated in the opinion, and thereby prevent the confusion which necessarily follows whenever an opinion is in effect overruled without so stating." The bar would infer from this perhaps an intent on the part of the writer, and possibly a majority of the court, either to intentionally overrule these cases cited, without expressly so stating, or that the cases cited are unintentionally overruled because the holdings were not examined or considered. Notwithstanding the statement of the chief justice, we here desire to state that these cases have all been considered and discussed in conference, and to the knowledge of the chief justice, long before he filed his opinion. But he has the right to state his belief that these cases are in effect overruled. We therefore will examine them to show the error of the statement, and to prevent the majority opinion from misleading the bar as it has apparently confounded the chief justice.

State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706, alleged in the dissents to be overruled, is cited in the main opinion in support of our holding. In that case the abstract of votes involved was a complete one, covering all precincts in the county, instead of being, as here, but a partial abstract of the county vote. And said abstract was sought to be impeached in mandamus proceedings, the moving papers of which charged that the county board of canvassers compiled the abstract from unofficial documents or improper precinct returns. The fact that the

opinion is based upon the proposition that the basis for the abstract may be considered to determine its validity is in effect a precedent for our holding, instead of antagonistic thereto. But that decision was placed upon the grounds that, conceding the official returns were not used, there was no showing that the result of a recanvass from official returns would be different; and in fact it was conceded that the abstract, from whatever compiled, was correct; and, further, that it had been already adjudicated as correct in the prior case of State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360, as the following from the last page of the opinion plainly states: "Being a citizen and taxpayer of Ward county he (relator) was constructively a party to the certiorari proceeding, and had the right to be heard and [with the right] to have any question pertinent to the issues litigated in that proceeding adjudicated. He remained silent while the attorney general, acting as his representative, admitted the correctness of the result shown by the abstract of the vote of the county commissioners; and only when it has been decided that such result, if correct, establishes the status of Mountraille county as an existing county of North Dakota, does he attempt to bring a proceeding that can be maintained only upon a showing that the result is the reverse of what the representative of the public interest has admitted it to be. This point once litigated the public interest requires that it should be at rest." Nothing in that decision can conflict with our holding here.

State ex rel. McCue v. Blaisdell, supra, above referred to, also claimed by the dissent to be overruled by our holding, was a mandamus proceeding wherein the propriety of the remedy was not involved, nor was there in issue a single question of fact. That opinion was written by the present chief justice. It discloses that the question for determination was whether an affirmative majority vote of all electors in the county voting upon county division was sufficient to constitutionally authorize county division. One side claimed such a majority was all that was necessary, while the opponents of division asserted that a majority of all electors voting on any proposition before the electors at such election was necessary before division was constitutionally carried. The decision of this point decided that case. There was no question of fact raised; it was conceded that a majority of those voting on county division favored the division, but that such majority would not amount to a ma-

jority of all electors voting at such election. The dissents say we have overruled this case. In the main opinion, we expressly state that we do not pass upon that question. This is but another illustration of the inaccuracy of such assertions. It is difficult to see any reason for such statement in the dissents.

Another case we are charged with overruling is State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834. That case decided a county-seat controversy between Bowbells and Lignite. It is cited in our main opinion as authority on one phase of our holding. It too was a mandamus proceeding, arising out of the action of a county canvassing board in casting out and refusing to include in their official canvass of a county-seat election several precincts in which the voting places therein, where the election was held, were considerably distant from the established voting places previously located by the board of county commissioners. This is in no wise a parallel question to any here involved. It was there held that the county canvassing board might take judicial notice of the locality of the designated voting places, and when the returns clearly indicated that an election was held at a point distant from such designated place, the board was justified in declining to canvass such returns; and, further, that the trial court properly "inquired into the facts, and finding that on a contest of the election there would be no justification for changing the certificate, declined to issue the writ," inasmuch as the writ of mandamus is not a writ of right. This holding is authority for the consideration of testimony in this case to determine whether judicial discretion shall be exercised in favor or against the creation of the new county, and that to receive testimony for such purposes in a mandamus case does not constitute, as Justice Burke avers it does, a contest of an election. And, again, we find the statement in the special concurring opinion of the chief justice at variance with the facts, when he says we have overruled this case. And it is significant that the opinion in State ex rel. Johnson v. Ely, referred to, also written by the chief justice, has been filed during the time this case at bar has been before this court for consideration, and since it was argued and submitted fully on the merits.

Again, State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231, is likewise said to be overruled by our holding. The question involved in that case is stated in the opinion to be: "Briefly stated the

question, and the sole question in this case, is whether the statements of election, or the tally sheets found in the poll books, govern the canvassing board in the performance of their duties. If the board could only consider the statements of election, then their canvass was both regular and correct and the judgment of the district court in this case was erroneous. If, on the other hand, the tally lists constituted a part of the returns, and were properly before the board as furnishing a basis for their canvass, then there was a legal duty resting upon the board to consider them. . . . What constituted the returns is the important question in this case," and the holding is thus summarized: "The purpose in furnishing the tally sheets was, without doubt, merely to provide a convenient place for noting the votes, for the purpose of computation as they were canvassed. That canvass, as we have seen, is required to be made by the inspector and judges, and the result announced publicly, and then committed to the written statement of the election. This statement and the poll book are the only documents constituting the returns, and the canvass by the county canvassing board is plainly confined thereto." Notice that the opinion expressly states that the canvass was regular and correct, and hence presumptively made upon returns from all of the precincts in the county. In the case at bar the attorneys stipulated facts which show that six precincts out of fifty-one in the county must have been omitted from the canvass, because no returns from said precincts were made, and hence could not have been before the canvassing board. And, as stated in the main opinion, opposite these six precincts, identified by name, are blanks upon the so-called abstract of votes by precincts, which instrument on its face shows its incompleteness, and that it is but the partial return of the vote on this question in that county, to supplement which as to facts the parties stipulated that 354 voters voted in such omitted precincts at said election, and no return from six precincts has been made. The case before us is in no wise parallel in facts or in law to State ex rel. Sunderall v. McKenzie, supra, and is not in any particular overruled by our holding. In fact, our construction of the facts in the McKenzie Case seems the same as that adopted by Justice Burke in writing the opinion in the recent Billings County division case, Pederson v. Billings County, 23 N. D. 547, 137 N. W. 484, decision of which has been filed since this case has been under consideration before this court. We have carefully examined all

of the other cases mentioned in the dissent of Justice Burke, and we fail to see how anything contained in any of them is overruled. Instead, the syllabus of State ex rel. Little v. Langlie, 5 N. D. 594, 32 L.R.A. 723, 67 N. W. 958, reads: "Mandamus to compel the county officers to hold their offices at the county seat is the proper remedy to determine whether the county seat has been legally changed." Whereas, if the principles applying to a county division election are analogous to those applying to a county-seat election, that case is authority against Justice Burke's conclusions, that to determine in mandamus the fact of whether the election has carried by the required majority is to contest an election by mandamus. It would seem that this case supports our conclusions, instead of his.

He also charges us with overruling State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234. An examination of page 383 shows this to be unfounded. That case is followed and furnishes precedent for our holding, in so far as it touches upon matters analogous to those here involved. That was an application for the exercise of the original jurisdiction of the supreme court by a writ of mandamus. The remedy was challenged. The court says: "The only question left relates to the remedy. The relator, having received the appointment and having qualified, is in a position analogous to one who holds a certificate of election and has qualified. This prima facie title gives him the right to the office pending any investigation as to the ultimate title; the defendant not being as to him even a *de facto* officer, but holding the office without so much as a color of title. That it is proper to try in mandamus proceedings all questions relating to the prima facie title is not open to debate in this state, since our decision in State ex rel. Butler v. Callahan, 4 N. D. 481; 61 N. W. 1025," another case said to be overruled. Turning to the report of State ex rel. Butler v. Callahan, at page 492 of the state reports, we read: "In our judgment the better rule is that in cases like this nothing can be tried except such questions as affect the prima facie title of the relator," and the court properly refused in a mandamus proceeding to investigate the respondent's qualifications to hold the office where concededly the relator held an admittedly valid certificate of election to office, and had duly qualified for that office. Such legal and valid certificate constituted title to the office, and valid title to the office could not be overthrown in mandamus, as

such is the purpose of office contest. But here, for State ex rel. Butler v. Callahan and State ex rel. Moore v. Archibald to be applicable, it would be necessary to concede that the abstract of votes by precincts was regularly issued upon returns from all precincts in the county, instead of a part of them only, that it might constitute a prima facie return as to the entire county. If such were the facts before us, we would agree on this point with Justice Burke's contention. The trouble with his views is that he gives undue prominence to an uncertain statement contained in a summary of the board as to the county vote, and begs the whole issue involved when he does so, and refuses to consider the fact that the abstract by precincts is incomplete on its face, and that it is stipulated by counsel, without objection thereto, and an uncontroverted fact in the record, that the piece of proof he would adopt as prima facie proof of the whole election is but proof as to a portion of the precincts of the county, and is impeached by facts appearing upon its face and facts stipulated in the record based upon allegations of the answer. An examination of the other cases cited in his dissent discloses that none of them are applicable to the facts before us, and therefore none of them are overruled.

In said dissent he also takes the peculiar position that because this mandamus proceeding is brought against a public officer, in the name of the state, on relation of an individual, and purporting to be in behalf of many citizens interested, that an answer denying the facts alleged by relator, and supplemented with matters purely of defense to the writ, must by some mysterious process of reasoning be considered as a contest brought by the answering defendant against the relator instituting the suit; and because the party defendant could not contest in his own name, he should not be permitted to defend a mandamus proceeding, because to defend would be to contest. This seems queer doctrine. The fact must be admitted that no contest is created by the answer. A denial of the necessary averments of complaint cannot constitute the commencement of an action, proceeding, or contest. The issue of fact merely is thus joined, and relator put upon his proof, whereupon he offers an alleged prima facie conclusive piece of evidence, the abstract. The court examines it, following State ex rel. Moore v. Archibald, and State ex rel. Butler v. Callahan, to ascertain by whom it was issued, upon what it was issued, and to determine in fact and law its legal

force as proof of the count of the ballots cast at that county-wide election, and discovers that this document is incomplete on its face, whereupon counsel stipulate facts reducing it to but prima facie proof as to but a portion of the vote of the county; and then, after all this, counsel for relator and the dissenting justice of this court aver that, to so examine and consider and give proper force to the evidence, documentary and stipulated, is to contest an election in mandamus. Further comment is needless.

This review of the case, after the filing of the petition for rehearing, is made that counsel filing it may feel that all matters presented by it have been considered. The importance of the litigation demands full explanation of our reasons for the holding; and the charges, to our minds ungrounded and made without consideration, that we have overruled particular and established precedent with or without consideration, justifies our review of the authorities to establish the contrary, that we may "thereby prevent the confusion which necessarily follows whenever an opinion is in effect overruled without so stating," quoting from the special concurring opinion of the chief justice.

On petition for rehearing, respondent questions the propriety of the dismissal of this action, contending in line with the suggestion contained in the opinion of the chief justice that the case should be remanded for further proof. To do so would be the equivalent of assuming that the result of the election could be established by competent proof at this late date. The authorities announce the rule that the result of an election may be established by other evidence than the returns, ballots, and election records, where from any cause such record evidence becomes incompetent or unavailable as evidence. 5 Enc. Ev. 69. But this general rule must be subject to some qualification as to time. McCrary, Elections, § 477, quoting Archer v. Allen, 1 Bart. Elect. Cas. 169. It cannot now be seriously contended that the ballots used in this election are still admissible as evidence. The sixty-day period prescribed by statute, during which they must have been kept, and when so kept were primary evidence, elapsed four years ago, and with the termination of that period ended their evidentiary value. "When ballots are still in existence and have been kept as required by law" they are admissible. Cooley, Const. Lim. p. 625; McCrary, Elections, § 480. "But the right to have recourse to the ballots presupposes that they

have been kept as required by law; that the guards thrown around them have been preserved, and that they still exist in the same integrity as when cast." Mechem, Pub. Off. § 229. Manifestly all election records in the various precincts, even if in existence, must be of but questionable value and of doubtful importance, even though verified by the testimony of the precinct officers themselves, as such time has elapsed that there is no means of verifying or challenging the truth of any such records as would have existed had they been offered within the period during which the ballots themselves could have been admissible. And what is true as to these records applies to the oral testimony of any election officials. To receive such evidence at this time, after two intervening elections, the necessity for which arises because of the dereliction of duty in making returns of said matter at the time of election, and while the statutory safeguards from which to verify or impeach the returns were in existence, must at the best leave any result, declared upon such evidence, still surrounded with uncertainty. The result of this election might actually turn upon the testimony of the election officers of a single precinct concerning so important a matter as the creation of a new county, and with the witness testifying with full knowledge of the number of votes necessary to defeat or create such result. To hold such testimony admissible would be in effect to permit the witness to cast not his own vote alone, but the vote of the precinct on such question. And this, too, when we find the importance of an election upon such a question to be greater than the ordinary election, as is emphasized by the existence of a constitutional provision upon county division elections while the ordinary election matter is not there touched upon. To receive testimony of this class as proof at this time would, we believe, be contrary to the spirit, if not the letter, of our election laws, the primary purpose of which is to so prescribe the manner of ascertaining the result of an election and so surround with safeguards the canvass of such result, with time limits to insure promptness, as to insure the determination of the election result with practically absolute certainty; and all to the purpose that the expression of popular will shall not depend upon even the canvass or oath of one individual election officer. It is thus manifest that the election laws themselves, probably from the experience had emphasizing their necessity, are framed against the possibility of fraud, thereby recognizing that without such safeguards frauds may be

perpetrated in the thwarting of the public will as ascertained by the ballot box. With this in mind the following comment from Oakes v. Finlay, 5 Ariz. 390, 53 Pac. 173, at page 176, would be particularly applicable to proof taken at this time concerning an election held over four years ago: "It is deemed unwise to lay down any rule by which the certainty and accuracy of an election may be jeopardized by the reliance upon any proof affecting such results that is not of the most clear and conclusive character. The temptation to actual fraud and corruption on the part of the candidates and their political supporters is never so great as when it is known precisely how many votes it will take to change the result. And men who are willing to sell their votes before election will quite as readily sell their testimony afterwards, especially as the means of detecting perjury and falsehood are not always at hand until after the wrong sought to be accomplished by it has become successful and the honest will of the people has been thwarted." Consult also Stafford v. Sheppard, 57 W. Va. 84, 50 S. E. 1016; Anderson v. Likens, 104 Ky. 699, 47 S. W. 867; Savage v. Umphries, — Tex. Civ. App. —, 118 S. W. 893, at page 903; Weakley v. Wolf, 148 Ind. 208, 47 N. E. 466; 50 Cyc. 420. And, besides, respondent has had ample opportunity to offer testimony on trial had the same been available; and the attempted perpetuation by respondent of any such testimony is contrary to the theory upon which he has tried this proceeding. He has contended that the abstract in question was prima facie proof of the entire election, and relied upon the same as the only proof necessary to establish the entire vote cast at such election. We can see no reason for remanding this case for further proceedings, notwithstanding that in the opinion of the chief justice to do so would be "the manifestly equitable and just disposition of this proceeding, which I suggest."

The petition for rehearing is denied, and we adhere to our decision.

BRUCE, J. I now and after the petition for rehearing concur both in the above opinion and in the opinion chief by Mr. Justice Goss.

BURKE, J. (on rehearing). My dissent heretofore filed expresses my sentiments regarding this case. When such dissent was filed the original opinion had been concurred in by but two justices of this court, but since that time Justice Bruce has expressed himself as favoring the opinion

as well as the result, so that said opinion is now entitled to record. I
make this explanation because of the portions of my first dissent which
refer to the fact that at that time two justices were establishing or
attempting to establish an opinion of this court.

SPALDING, Ch. J.   When my opinion was written in this case only
two members of the court had joined in what now seems to be the
majority opinion.   That opinion had awaited the concurrence of a third
member for many weeks, and such concurrence then seemed out of
the question, as did any agreement of any three judges on anything
more than the result; and for that reason I did not deem it necessary or
proper to more than call attention to some of my reasons for not con-
curring fully in the great number of questions attempted to be passed
upon.   The statement that the decisions in the cases referred to are not
overruled probably settles that as a fact, but interested litigants may not
so regard it.   It is wholly immaterial, as I view the question, whether
a case is overruled or not, as an abstract proposition; but it is highly
important that the construction of a law be settled when it is in ques-
tion, and that there be some degree of stability in the decisions of this
court; and if, as conceded, it is important that confusion be avoided
the question of overruling a decision or not overruling it should bear
analysis, regardless of any naked statement of the fact.   I shall not
add to the at least extraordinary length of the opinions in this case by
submitting an analysis of the cases referred to, because by so doing it
might give the appearance of the existence of an unseemly controversy
in this court, which is not the fact.   I will simply say that it seems to me
that a too narrow interpretation is given to State ex rel. Sunderall v.
McKenzie, 10 N. D. 132, 86 N. W. 231.   The facts were before this
court and showed, or at least it was alleged and not in issue, that no
returns were made of the women's votes for superintendent in certain
precincts, and that had returns been made of such votes the result would
have been changed.   Notwithstanding this, the candidate, having a
majority on the returns made, retained the office.   There may be a dis-
tinction between partial returns from each precinct and complete re-
turns from some precincts and none from others.   It is true it was
said in State ex rel Davis v. Willis, 19 N. D. 209, 124 N. W. 706, as
quoted in the majority opinion herein, that "the reasonable presumption

is that an election being held in Ward county on the day in question and a proposition in which the people were generally interested legally presented to the electors for determination, votes were cast pro and con thereon in all of the election precincts of the county;" and that this presumption was stronger than the presumption that no vote was cast because no return thereof was made that could be officially recognized. But it was there held that it will be presumed that the result shown by the abstract already prepared is substantially correct, in the absence of an express allegation that the number of unreturned votes will produce a different result. And this latter presumption prevailed. In other words, the court held that while there was a presumption that votes were cast pro and con, the presumption that the result would not be changed prevailed in the absence of an express allegation that the result would be changed if a canvass of such votes were made. I omit all reference to those cases in which I wrote the opinions, for the reason already stated, and for the further reason that the meaning of language used in an opinion is often clear to the writer thereof when it is obscure to the reader. The members of the bar can judge of these decisions for themselves. I will, however, add that I did not intend to be understood as of the opinion that every proposition determined in the cases referred to was overruled, or that the same point was overruled in each case. The bar will now understand that this court still considers those cases authorities. I will bring this wearisome discussion to a close by the observation that I am of the opinion that a decision of the supreme court of the territory of Arizona at the time Oakes v. Finlay, 5 Ariz. 390, 53 Pac. 173, was decided, holding it unwise to lay down any rule by which the certainty and accuracy of an election may be jeopardized by reliance upon any proof affecting the results of an election, that is not of the most clear and conclusive character, for the reason that the temptation to actual fraud and corruption is so great when it is known precisely how many votes are necessary to change the result, and because men willing to sell their testimony after election would find opportunity to do so under such circumstances and thereby thwart the will of the people, need not necessarily be taken as an authority in this state. The character of the population in Arizona when that decision was reached was such as to make it pertinent; the intelligence and character of the people of this state are such that dangers incident to

such a situation in that territory at that time have little bearing here at the present time. Hence that decision ought, in the absence of something to support an inference of fraud or contemplated perjury, to carry but little weight as an authority in this state.