THE STATE OF NORTH DAKOTA *ex rel.* THE DAKOTA HAIL
   ASSOCIATION, of Plankinton, Plaintiff and Respondent, *v.*
   A. L. CAREY, Commissioner of Insurance of North Dakota,
   Defendant and Appellant.

**Mandamus — Parties — Procedure — Insurance Companies—
Right to Transact Business.**

1. Under the territorial statutes now in force in this state, the remedy by *mandamus* is in some respects assimilated to a civil action, but is not in strictness a civil action, and is a special proceeding. Comp· Laws 1887, §§ 5505, 5536.

2. The party prosecuting the writ may be known as the plaintiff, and the adverse party as the defendant; but where the writ is sought to enforce a duty due the state as such, or sought with respect to a right of common concern to a large number of persons, but not a right where the state as such is concerned, or sought to enforce a right peculiar to the relator, the proceeding should be had in the name of the State *ex rel.* the ———.

3. Where the remedy concerns the state as such, the writ should be applied for by the attorney general, or, at least by his assent.

4. Where the subject-matter does not concern the state as such, but is of common concern to a large number of persons—for example, to all citizens of a county, town, city, or district—any citizen of the locality is beneficially interested, and may apply for the writ, within the meaning of § 5518, Comp. Laws 1887.

5. Where the writ is sought for the benefit of the relator alone, the fact of his special and peculiar right to the writ must be made to appear by the affidavit.

6. The insurance commissioner of this state, in granting or revoking a certificate authorizing insurance companies to transact business within the state acts within the limits of a discretion express'y conferred upon him by statute. Such official discretion, when once it has been exercised, cannot be controlled or reviewed by *mandamus*.

(Opinion Filed June 16, 1891.)

*A*PPEAL from district court, Burleigh county; Hon. W.
   H. WINCHESTER, Judge.

*C. A. M. Spencer*, Att'y Gen., for appellant.   *S. L. Glaspell*,
for respondent.

*Mandamus* proceedings.    Peremptory writ, as prayed for by relator, issued.    Defendant appeals.    Reversed.

The opinion of the court was delivered by

WALLIN, J.    The affidavit upon which the alternative writ issued was made by the secretary of relator, and states, in substance, that the relator is a mutual hail insurance company, organized under the laws of the territory of Dakota, and has been engaged in business in the states of North and South Dakota, with its principal office at Plankinton, South Dakota; that the relator has at all times fully complied with the laws of North Dakota, and is therefore authorized to do business in said state; that the defendant, as insurance commissioner, issued to the relator a certificate of authority to do business in North Dakota in 1890, and at the close of that year, and on January 27, 1891, relator filed with the defendant its annual statement, as required by law, which defendant accepted without objection, and has at no time given relator notice of any defect therein; that relator has literally complied with all the requirements to authorize it to do business in this state during the year 1891, and on January 27, 1891, defendant issued to it a certificate of authority for said year.    On the same day relator tendered to defendant the fees for filing such statement, and for furnishing copies for publication, and for issuing said certificate.    Defendant requested affiant to hold said money until some time later, which relator did.    That on February 6, 1891, relator sent said money to defendant, who on March 3, 1891, returned the same. On March 10, 1891, relator again tendered said fees, together with the legal fees for issuing certificates to five agents, all of which the defendant refused to accept; and relator deposited said fees in the name and for the use of said defendant in the James River National Bank, and notified defendant accordingly. That defendant has failed to publish such annual statement, or designate the newspapers in which the same may be published. That on February 19, 1891, the defendant, by letter, attempted to recall relator's certificate of authority, and again, on February 25th, defendant, by letter asked relator to surrender such certificate, and stated that said fees would be returned later.    On

March 10, 1891, relator presented to defendant a properly certified list of agents, and demanded that certificates of authority be issued to such agents, and at the same time tendered the legal fees therefor. On March 16, 1891, defendant, by letter to relator, refused to issue such certificates to agents, and declared relator's certificate of authority "null and void," and ordered relator to discontinue business in this state, and returned the fees to relator; and on the same day defendant issued and sent to relator a proclamation assuming to revoke the authority of relator to do business in this state. All the letters mentioned in said affidavit are attached as exhibits, and also the certified list of agents, with demand as stated, and the proclamation issued by defendant. The alternative writ commanded the commissioner to publish such annual statement for the year 1890, to designate the papers in which the same should be published, and issue certificates of authority to local agents, or to show cause, etc. On the return-day the defendant, by the attorney general, appeared before the district court, and moved to quash the alternative writ upon two grounds: *First*, that the said action is not brought in the name of and by the proper party, the real party in interest; *second*, that the affidavits and exhibits show upon their face that the plaintiff is not entitled to the relief demanded. The motion to quash was denied, and defendant excepted to the ruling. Defendant elected to stand upon the motion to quash, and refused to answer or plead further. Wherenpon the trial court entered judgment, adjudging as follows: "That a peremptory writ of *mandamus* do now issue out of this court directed to the said defendant, A. L. Carey, commanding him that he do forthwith publish, or cause to be published, the annual statement for the year 1890 of the relator the Dakota Hail Association, and to select or designate the newspapers in which the same may be published; and that he issue certificate of authority to the agents of said Dakota Hail Association as requested; and that plaintiff do have and recover of defendant the costs of the proceeding." The errors assigned in this court are that the court erred in denying the motion to quash, and in entering the judgment. It is a stipulated fact that the state, as such, has no interest in the controversy. We

shall therefore, without conceding that such a stipulation is binding upon the court, and without passing upon the question of whether the state, as such, has a direct interest in the questions at issue, proceed to consider the matter as a purely private controversy.

The attorney general contends that this proceeding is not a special proceeding, but is a civil action, and, consequently, that it should be brought in the name of the real party in interest, *i. e.*, in the name of the Dakota Hail Association of Plankinton, S. D., and should not be brought in the name of the State of North Dakota ex rel., etc.; citing Comp. Laws 1887, §§ 4830, 4870, 5005, 5518; 14 Amer. & Eng. Enc. Law, p. 217, and cases cited. Section 4830 in terms refers only to "actions at law and suits in equity," as such actions and suits existed prior to the innovations made by the reformed procedure. No reference is made to a special proceeding. See Comp. Laws 1887, §§ 4810, 4812. Section 4870 declares that "every action must be prosecuted in the name of the real party in interest," etc. This obviously has reference exclusively to those remedies formerly had by an action at law or by suit in equity, and we think it would be a violation of the plain intent of the statutes to extend its meaning so as to include special proceedings which are not mentioned in § 4870, but on the contrary, are regulated by distinct and special proceedings of the statute. Comp. Laws 1887, §§ 5505, 5536. The attorney general also cites the following authorities: State v. Marston, 6 Kan. 524; Bobbett v. State, 10 Kan. 15; State v. Board, 11 Kan. 67; People v. Pacheco, 29 Cal. 213; Territory v. Cole, 3 Dak. 301, 19 N. W. Rep. 418. Doubtless these cases, especially that cited from California, with others from that state not cited, tend to support the position taken by the attorney general. With respect to the territorial case, it will be noticed that the case seems to turn upon the non-residence and non-official capacity of the relator, rather than upon the question how the procedure should be entitled. The use of the name of the territory is not criticised in the opinion. In the state of Kansas the statutes regulating the remedy by *mandamus* differ materially from those of this state. The Kansas enactments pointedly recognize the

remedy as a civil action by repeatedly referring to the parties as "plaintiff" and "defendant." Gen. St. Kan. 1889, pars. 4809, 4811. The statutes of Iowa, in express terms, make the remedy an action, and authorize the action to be brought in the name of either the state or a private party, according to the nature of the case. McClain, Ann. St. §§ 3373, 3385. Authorities based on these statutes are not in point in this state, as we have no such statutes. It must be conceded, however, that there is authority of great weight sustaining the position of the attorney general, but we think the better authority and better reason is the other way. We have found no precedent in the reported cases decided by the late territorial supreme court for omitting the name of the sovereign in any *mandamus* case. We can see no good likely to result from changing the established practice in this respect, and, on the other hand, a change not based on a new and well-considered statute would, in our opinion, tend to much confusion in the practice, and thereby greatly impair the usefulness of the writ.

We think the statutes regulating special proceedings give countenance to the existing practice. Comp. Laws 1887, §§ 5518, 5527. We therefore hold that the name of the state was properly inserted in the title of this proceeding. High, Extr. Rem. § 430. We still add, as a guide for future cases, that the name of the state should be inserted in the writ in connection with the name of the relator in all cases whether the matter is one in which the state as such is strictly a party in interest or not, or whether the question is one of public concern or a purely private dispute. The statutes of the state have assimilated the *mandamus* proceeding to a civil action, but have not made it a civil action, as is done in the case of *quo warranto*. Comp. Laws 1887, §§ 5345, 5361. We think it will be proper to add, with a view to settling a very embarrassing and much controverted question of practice, that in cases where the state, as such, is directly interested as a party, the attorney general should apply for the writ, or in some manner signify his assent to the proceeding ; but on the other hand, where the controversy does not concern the state, as such, but does concern a large class of citizens in common, as, for example, the citizens

and tax-payers of a particular county, town, city or district, the required affidavit may properly be made by any citizen of the locality affected. In the class of cases last referred to, any citizen of the locality affected is, in our opinion, "beneficially interested" within the meaning of section 5518, Comp. Laws 1887. It follows that, in this class of cases, the writ may be invoked by any citizen without the concurrence of any officer. People v. Collins, 19 Wend. 56; Railroad Co. v. Hall, 91 U. S. 355; Pumphrey v. Mayor, 47 Md. 145; Attorney General v. Boston, 123 Mass. 479, opinion; People v. Board, 56 N. Y. 249; People v. Common Council, 77 N. Y. 503; note to Dane v. Derby, 89 Amer. Dec. 741; State v. Weld, 39 Minn. 426, 40 N. W. Rep. 561; High, Extr. Rem. § 431, Hyatt v. Allen, 54 Cal. 353; State v. Board, 35 Ohio St. 368.

Where the right sought to be secured by the writ is private only, the relator must, of course, show that his individual interest is affected in some way peculiar to himself. See authorities supra. It may be added that under § 4, c. 21, Laws 1890, defining the duties of the attorney general of the state, it would not be the duty of that officer to represent the state officially in court or in any case where an inspection of the papers would disclose the fact that the name of the state is inserted in the writ as a formal or nominal party only, and that the state, as such, is not interested as a party in the subject-matter. It follows from what has been said that the district court did not err in holding that this proceeding is properly instituted and entitled in the name of the state. The record discloses that many of the material averments in the affidavit of the relator are not embodied in the alternative writ, but are simply referred to and adopted as a part of the writ, without being annexed thereto. The point is not made on the motion to quash the writ, and we shall dispose of the case wholly on another ground. But we are clear that the omission to incorporate in the alternative writ any material fact contained in the affidavit would be fatal on demurrer or motion to quash the writ. The writ only is served on the defendant, and the defendant answers only to the alternative writ in cases where such writ issues. The writ should be treated as a declaration at

common law or a complaint under the Code, and nothing which is omitted from it need be answered. Comp. Laws 1887, §§ 5519, 5521, 5522, 5528; High, Extr. Rem. §§ 449, 451.

Proceeding to the merits of the motion to quash the writ, we are called upon to determine whether the facts stated in the writ, including for the purposes of this case all the facts set out in the affidavit, are sufficient in law to entitle the relator to the peremptory writ. The attorney general contends that the affidavit shows affirmatively and clearly that the relator is not entitled to invoke the aid of the writ for the purpose of compelling the commissioner of insurance to do the various acts and things required to be done by the writ, viz., to designate the newspapers in which the relator's annual statement should be published, and to issue the certificates of authority to enable the local agents of the relator to transact business, etc. § 3053, Comp. Laws 1887. The ground work of the contention is that the insurance company complaining is not entitled to the writ, because it is not, and was not when the writ issued, legally entitled to have its annual statement for 1890 published, nor legally entitled to have certificates issued to its local agents enabling them to do business for the current year, because, as counsel contends, the company itself was and is without authority to do business in this state; the certificate issued to the company by the defendant for the year 1891 having been "canceled" and declared "null and void," and the company notified thereof by a formal letter from the commissioner, dated March 15, 1891. The motion to quash admits the facts set out, and it is conceded that the various letters constituting the exhibits were written by the insurance commissioner and received by the relator prior to instituting this proceeding; but the relator denies the authority of the commissioner to revoke the relator's certificate on any grounds set out in any of the letters. In his brief counsel for relator says: "It is admitted that the commissioner of insurance has authority, in some cases, to revoke and cancel certificates issued by him, but it is vigorously denied that this is one of such cases. There must be cause for such action on the part of the commissioner. Having once authorized an insurance company to commence business in this state,

its continuance does not depend on his whim or caprice. There must be a reason found in the statute for depriving the company of what is usually a valuable franchise or right. The causes upon which such action may be taken are found in Laws 1885, c. 69, §§ 28, 33, and Laws 1890, c. 75."

The issues presented require a consideration of the nature and extent of the authority vested in the insurance commissioner with respect to granting and revoking certificates of authority to do business in the state. Section 16, c. 69, Laws 1885, provides that insurance companies doing business in the state shall annually, on the 31st day of December, make and file with the insurance commissioner a statement, as prescribed in the act, showing in detail its business affairs and financial resources, etc., which statement, together with the certificate of authority for the company to do business, are required to be published in certain newspapers, as indicated by said § 16. Section 25 of said chapter is as follows: "It shall not be lawful for any agent or agents to act for any company or companies referred to in this act, directly or indirectly, in taking risks or transacting the business of fire, cyclone, tornado, hail and inland navigation insurance in this territory, without procuring from the territorial auditor a certificate of authority, stating that such company has complied with all the requisites of this act which applies to such company. The statements and evidences of investment required by this act shall be renewed from year to year, in such manner and form as required by this act; and the auditor, on being satisfied with the capital, securities and investments remaining secured as hereinbefore provided, shall furnish a renewal of the certificate as aforesaid." Section 28 is as follows: "If the auditor has, or shall have, at any time after examination, reason to believe that any annual statement or other report required or authorized by this act, made or to be made out by any officer or officers, agent or agents of any corporation, association or partnership incorporated by or organized under the laws of any state or territory of the United States or any foreign government, is false, it shall be the duty of said auditor to immediately revoke the certificate of authority granted on behalf of said corporation or association, and mail a

copy of said revocation to such company, and the agent or agents of such corporation, association or partnership, after such notice, shall discontinue the issuing of any new policies, or of the renewal of any policy previously issued; and such revocation shall not be set aside, nor any new certificate of authority be given, until satisfactory evidence shall have been furnished to said auditor that such corporation or association is, in substance or in fact, in the condition set forth in such statement or report, and that all requirements of said act have been fully complied with." Section 29, Id., expressly authorizes the commissioner, either in person or by representative, "whenever he shall deem it expedient to do so," to "examine into the affairs" of any company doing business in this state. Section 33 reads as follows: "And whenever it shall appear to said auditor from the report of the person or persons appointed by him that the affairs of any company not incorporated by the laws of this territory are in unsound condition he shall revoke the certificates granted in behalf of said company, and shall cause a notification thereof to be published in any newspaper of general circulation published at the capital, and mail a copy thereof to each agent of the company. The agent or agents of such company shall, after such notice, be required to discontinue the issuing of new policies, and the renewal of any policies previously issued." From these provisions of the statute it conclusively appears that the state, through its legislature, has seen fit to invest the commissioner of insurance with an absolute power and discretion with respect to granting insurance companies permits to do business within the state, and also with respect to revoking such permit after it has been once granted. With respect to granting the permit to do business, it does not suffice that a company is in fact solvent and has strictly complied with all legal prerequisites to the transaction of business. It can secure the permit only when the commissioner "is satisfied with the capital, securities and investments," etc. § 25, Id. Again, where a company has made the prescribed annual statement of its affairs and resources in good faith, and with entire truthfulness in fact, the commissioner may revoke any certificate of authority to do business given to

such company if, after an examination conducted as he sees fit, or without such examination, the commissioner "has reason to believe that such annual statement  *  *  *  is false." Section 28, Id.  The same absolute right to revoke a certificate of authority is given the commissioner when the examination has been made by a representative of the commissioner, if from the report made it shall appear to the commissioner "that the affairs of any company not incorporated by the laws of this territory are in unsound condition." § 33, Id.  Whether such unrestricted power and discretion to either grant or withhold a permit to do business within the state, and to revoke or not revoke such permit when granted, is or is not wisely vested in the insurance commissioner, are questions which address themselves to the legislature.  The courts can not consider the expediency of any law which the legislature has power to enact. The power to prescribe terms on which a foreign insurance company can do business in a state is plenary.  State v. Doyle, 40 Wis., 176, 220.  It is elementary that the writ of *mandamus* will not issue to control the exercise of judgment and discretion which the law invests in an officer.  To do so would simply result in a usurpation by the courts of the very power and discretion which the law confers upon others.  High, Extr. Rem. §§ 44, 46.  The court has not been aided by counsel in this branch of the case by the citation of authority, but we have found a recent case from Kansas which is a *mandamus* case, and practically on all fours with the case under discussion, and in our view is exactly in point.  Insurance Co. v. Wilder, 20 Pac. Rep. 265.  The whole case is instructive, but we need quote only the syllabus: "The determination of the superintendent of insurance granting, refusing or revoking licenses authorizing insurance companies to transact business within the state involves the exercise of official judgment and discretion on its part which can not be controlled or directed by *mandamus*." It follows that the trial court erred in denying the defendant's motion to quash the alternative writ upon the merits, and in entering judgment in favor of the relator.  The judgment should be reversed and it will be so ordered.  All concur.