1999-NMSC-036

990 P.2d 1277

STATE of New Mexico, ex rel., Max COLL, David Parsons, Jerry Lee Alwin, Mimi Stewart, Judith McDaniel, Guy Clark, Martha Cole, Scholastic, Inc., and Dulaney Barrett, Plaintiffs–Appellees,

v.

Gary E. JOHNSON, Governor of the State of New Mexico, Defendant–Appellant,

and

Michael A. Montoya, State Treasurer, Patricia A. Madrid, Attorney General, John J. Chavez, Secretary, Taxation and Revenue Department, the State Gaming Representative, and the Gaming Control Board and its members, Defendants.

No. 24,884.

Supreme Court of New Mexico.

Sept. 10, 1999.

David E. McCumber, Santa Fe, for Appellant.

Victor R. Marshall & Associates, P.C., Victor R. Marshall, Albuquerque, for Appellees.

Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, L.L.P ., Richard W. Hughes, Santa Fe, for Amicus Curiae Pueblo of Santa Ana.

Rosenfelt, Barlow & Borg, P.A., Sarah W. Barlow, Albuquerque, for Amicus Curiae Pueblo of Taos.

Joseph D. Little, Santa Fe, for Amicus Curiae Pueblo of Pojoaque.

Stetson Law Offices, P.C., Catherine B. Stetson, Albuquerque, for Amicus Curiae Pueblo of Tesuque.

Williams, Janov & Cooney, P.C., Gwenellen P. Janov, Albuquerque, for Amicus Curiae Pueblo of San Felipe.

Fermin A. Rubio, Las Cruces, for Amicus Curiae City of Las Cruces.

### OPINION

FRANCHINI, Justice.

{1} The plaintiffs in this case are four members of the New Mexico House of Representatives, five private citizens, and a non-profit corporation (Plaintiffs). Plaintiffs filed this action in district court, attacking the legality of legislation authorizing Indian gaming in New Mexico. See NMSA 1978, §§ 11–13–1 and 11–13–2 (1997) ("HB 399"). We hold that the matter must be dismissed be-

cause the Plaintiffs cannot join certain indispensable parties, namely the various Tribes and Pueblos that have gaming compacts with the state. We also reverse the district court's grant of standing to Plaintiffs under the great public importance doctrine, and hold that mandamus is not proper in the circumstances of this case.

*PROCEDURAL POSTURE*

{2} Following an interlocutory appeal that was certified to this Court by the Court of Appeals, we remanded to the district court to allow Plaintiffs to amend their complaint. Our instructions on remand also directed the district court to develop a record and enter rulings on the following matters:

(a) Those issues that can be litigated without the necessity of joining additional persons or entities as parties under Rule 1–019 NMRA 1998.

(b) Whether or not [P]laintiffs have standing to litigate the allegations made in the first amended complaint; and

(c) If relevant, whether or not [P]laintiffs have suffered actual injury or harm.

On remand, Plaintiffs indeed filed an amended complaint, adding several plaintiffs and defendants and styling their new pleading a "Petition for Writ" instead of the former "Complaint For Injunctive and Declaratory Relief." Plaintiffs did not attempt to join as defendants the various Tribes and Pueblos that have gaming compacts with the state.

{3} Following expedited discovery, Governor Johnson and other Defendants moved to dismiss Plaintiffs' amended complaint on the grounds that Plaintiffs did not have standing and had failed to join indispensable parties. After a hearing, the district court denied the motions to dismiss for failure to join indispensable parties, finding that "some of the relief sought" by Plaintiffs in their amended complaint "may be granted without joining additional parties." The district court also denied the motions to dismiss for lack of standing. Although the district court determined that "Plaintiffs do not have standing to bring this action based upon their status as state legislators" and further ruled that neither the legislators nor any of the other Plaintiffs "have standing based upon direct and personal harm," the court nevertheless concluded:

[P]laintiffs do have standing to bring this action because it is a matter of great public importance. The court finds that this matter involves an issue of great public importance, and therefore grants standing on that ground alone.

The matter having been returned to this Court, we reach different conclusions than the district court on the necessity of additional parties and the propriety of granting standing based solely on the great public importance doctrine.

*DISCUSSION*

■ {4} We first address the issue of whether the Tribes and Pueblos that have gaming compacts with the state are indispensable parties to this action. The legal concept of indispensable parties is based on recognition of the fact that in some cases a particular person or entity cannot be joined in the suit. In this case, for instance, Plaintiffs do not dispute that the Tribes and Pueblos are entitled to sovereign immunity and may not be sued in state court without their consent. *See Srader v. Verant*, 1998–NMSC–025, ¶ 29, 125 N.M. 521, 964 P.2d 82 ("As sovereigns, Indian tribes are immune from suit absent Congressional authorization or an effective waiver in tribal, state, or federal court."). The purpose of a district court's inquiry into whether a person or entity is an indispensable party is to determine whether, "in equity and good conscience[,] the action should proceed among the parties before it, or should be dismissed, the absent person [or entity] being thus regarded as indispensable." Rule 1–019(B) NMRA 1999.

■ {5} Rule 1–019(B) sets out four non-exclusive factors to be considered in determining whether or not an entity is an indispensable party:

first, to what extent a judgment rendered in the [entity]'s absence might be prejudicial to [it] or those already parties;

second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

third, whether a judgment rendered in the [entity]'s absence will be adequate; [and]

fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(Paragraph form and hanging indentation added for clarity.) "In reviewing a district court's Rule 1–019 decision, this Court considers whether the district court abused its discretion." *Srader*, 1998–NMSC–025, ¶ 21, 125 N.M. 521, 964 P.2d 82. However, "controlling precedent in this jurisdiction significantly cabins a district court's discretion under certain circumstances." *Pueblo of Sandia v. Babbitt*, 47 F.Supp.2d 49, 52 (D.D.C.1999).

{6} Apparently focusing on the second Rule 1–019(B) factor, shaping of relief, the district court opined that "some of the relief sought" by Plaintiffs "may be granted without joining additional parties," namely the Tribes and Pueblos. However, the court did not specify what shape that relief might take or on which of Plaintiffs' claims it could be granted. Instead, the district court simply denied Defendants' motions to dismiss in their entirety. After a careful review of the Plaintiffs' amended complaint and all four Rule 1–019(B) factors, a review that is informed by our recent precedent on the issue of indispensable parties in Indian gaming cases, we reverse the district court's denial of the motions to dismiss for failure to join indispensable parties.

*Part One: Rule 1–019(B) and Srader v. Verant*

{7} Plaintiffs seek in this action a determination "that the current compacts executed by the Governor are without legal effect and that no gaming compacts exist between the Tribes and Pueblos and the State of New Mexico." Clearly, the effect of such a judg-ment from this Court would be deeply prejudicial to the gaming Tribes and Pueblos, resulting in the very real possibility that their gambling operations could be shut down. *See Pueblo of Santa Ana v. Kelly*, 932 F.Supp. 1284, 1290–91 (D.N.M.1996) (noting the U.S. Attorney's warning that continuation of gaming activities in the absence of a valid compact would subject the Tribes and Pueblos to federal criminal sanctions and forfeiture of their gaming devices); *aff'd* 104 F.3d 1546, 1559 (10th Cir.1997). Hence, the first factor in our Rule–1–019(B) analysis suggests that dismissal is appropriate. *See Srader*, 1998–NMSC–025, ¶ 31, 125 N.M. 521, 964 P.2d 82.

{8} With regard to Rule 1–019(B)'s second factor, inasmuch as a halt to Indian gaming is the object of this litigation, no protective provisions can be crafted to insulate the Tribes or Pueblos from the effects of an adverse judgment. *Cf. Srader*, 1998–NMSC–025, ¶ 32, 125 N.M. 521, 964 P.2d 82. (discerning no possible way to lessen or avoid prejudice under Rule 1–019(B) when "the tribes are directly involved in the commercial transactions that the litigation seeks to halt").

{9} Under the third and fourth factors of analysis under Rule 1–019(B), as we determined in *Srader*, "the adequacy of remedy remaining for the [p]laintiffs in the event of dismissal provides no basis for permitting this case to proceed without the tribes." *Id.* ¶ 33. In *Srader*, we stated: "As a matter of public policy, the public interest in protecting tribal sovereign immunity surpasses a plaintiff[']s interest in having an available forum for suit." *Id.* We reaffirm that holding today with respect to the plaintiffs in this case and their particular claims, as we discuss more fully below.

*Part Two: Mandamus and State ex rel. Clark v. Johnson*

{10} Plaintiffs argue that this case is controlled not by Rule 1–019(B) or the public policy articulated in *Srader* regarding tribal sovereign immunity, but by *State ex rel.*

**158**

*Clark v. Johnson,* 120 N.M. 562, 904 P.2d 11 (1995). In *Johnson,* this Court issued a writ of mandamus that declared the original, pre-HB 399 compacts between the Governor and certain tribes and pueblos to be without legal effect. 120 N.M. at 578, 904 P.2d at 27. We did so in spite of the writ's obvious effect on then-incipient Indian gaming because the Governor's unilateral act of binding the state to the terms of the compacts, without legislative authorization or ratification, was both patently beyond his authority and a clear violation of state constitutional separation of powers principles, *see id.* at 576–78, 904 P.2d at 25–27, thereby posing a serious threat to "this State's definition of itself as sovereign," *id.* at 569, 904 P.2d at 18. We were careful to point out in *Johnson* that

> In a mandamus case, a party is indispensable if the "performance of an act [to be compelled by the writ of mandamus is] dependent on the will of a third party, not before the court." *Chavez v. Baca,* 47 N.M. 471, 482, 144 P.2d 175, 182 (1943). That is not the case here. Petitioners seek a writ of mandamus against the Governor of New Mexico, not against any of the tribal officials. Resolution of this case requires only that we evaluate the Governor's authority under New Mexico law to enter into the compacts and agreements absent legislative authorization or ratification.

*Id.* at 570, 904 P.2d at 19. As this Court stated in *Srader,* "*Johnson* articulates an indispensability rule based on the special character of mandamus." 1998–NMSC–025, ¶ 37, 125 N.M. 521, 964 P.2d 82.

{11} Here, citing *Johnson,* Plaintiffs have styled their amended complaint a petition for writ of mandamus and they advance several arguments regarding the grave threats HB 399 allegedly poses to this state's definition of itself as sovereign. Upon close examination, however, none of Plaintiffs' arguments provide a proper basis for this Court to order mandamus. *Johnson* is therefore inapposite.

■ {12} "Mandamus is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms v. Carlsbad Irrigation Dist.,* 1998–NMCA–023, ¶ 12, 124 N.M. 698, 954 P.2d 763. "The writ shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law. It shall issue on the information of the party beneficially interested." NMSA 1978, § 44–2–5 (1884). "[A] writ of mandamus is available only to one who has a clear legal right to the performance sought; it is available only in limited circumstances to achieve limited purposes." *State ex rel. Stratton v. Alto Land & Cattle Co.,* 113 N.M. 276, 282, 824 P.2d 1078, 1084 (Ct.App.1991); *see generally* 55 C.J.S. *Mandamus* § 57 (1998).

{13} We conclude that Plaintiffs fail to show a clear legal right to the performance they seek in their petition for a writ of mandamus. In contrast to the facts in *Johnson,* 120 N.M. at 562, 904 P.2d at 11, the Legislature has now passed legislation authorizing gaming compacts with the Tribes and Pueblos. *See* §§ 11–13–1, 11–13–2; *cf. Sears v. Hull,* 192 Ariz. 65, 961 P.2d 1013, 1020 (1998) (en banc) (distinguishing *Johnson* on the grounds that Arizona had expressly authorized its governor to enter into gaming compacts). Thus, instead of ascertaining "the Governor's authority to enter into compacts and agreements absent legislative authorization or ratification" as we did in *Johnson,* 120 N.M. at 570, 904 P.2d at 19, we are asked today by Plaintiffs to evaluate a much broader and more loosely defined set of issues involving standing generally and whether Plaintiffs are beneficially interested parties under the mandamus statute.

*Part Three: Standing and Whether Plaintiffs Are Beneficially Interested Parties*

■ {14} We question in this case whether Plaintiffs are "beneficially interested" parties under the mandamus statute. *Cf.* 55 C.J.S. *Mandamus* § 57a. (1998) (noting that whether a right is clearly established implicates standing concerns). Plaintiffs assert that they are proper parties to bring this petition because they are citizens, taxpayers, and voters in this state. They also contend

that they are "acting as private attorneys general in protecting the rights of citizens generally." In addition, Plaintiffs insist that they have standing because they "have suffered, or will suffer, actual harm, or impairment and injury to legally protected interests." We are not persuaded that any of these alleged grounds entitle Plaintiffs to seek mandamus as "beneficially interested" parties in this case.

{15} Plaintiffs mount numerous attacks on the legality of HB 399 under federal and state law. For example, Plaintiffs contend that HB 399's provision for revenue sharing violates the federal Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 (1994 & Supp. III 1997). Plaintiffs also assert that implementation of HB 399 is illegal because, in their view, the statute's precondition that the Secretary of the Interior approve Indian gaming in New Mexico has not yet occurred. Plaintiffs also complain rather obliquely that HB 399 violates the New Mexico Constitution and state law in that (1) it "embraces more than one subject" contrary to Article IV, Section 16; (2) it "enacts local or special laws" contrary to Article IV, Section 24; (3) it creates a prohibited monopoly contrary to Sections 26 and 38 of Article IV, and (4) it is an impermissible delegation of the legislative power to the Tribes and Pueblos.

{16} In making the foregoing allegations, Plaintiffs essentially argue that the Governor and the Legislature had a duty to see that HB 399 complied with federal and state law, and they seek mandamus to enforce that duty. However, as this court recognized in *Asplund v. Hannett*, 31 N.M. 641, 650, 249 P. 1074, 1077 (1926), "The constitutionality of a statute is not in itself a cause of action, nor a head of equity jurisdiction." The Court held that the plaintiff in *Asplund* did not have standing, as a citizen and taxpayer, to challenge the constitutionality of legislative appropriations from a water irrigation fund. *Id.* at 650, 665, 249 P. at 1077, 1083. The same result obtains here. We explain.

{17} To show that they have standing as "beneficially interested" parties under the mandamus statute, Plaintiffs cannot simply rely on the assertion that the Governor or the Legislature owe the general public a duty to ensure that HB 399 complies with federal and state law. Rather, Plaintiffs must show a more particularized nexus between their specific interests and the duties of state officials. In *Womack v. Regents of the Univ. of New Mexico*, 82 N.M. 460, 461, 483 P.2d 934, 935 (1971), this Court concluded that "the respondents owe their duties to the State of New Mexico, not to a private person. This being so, it follows that relator, though a taxpayer, has no standing to enforce by mandamus a duty owing to the public." Similarly, in *State ex rel. Naramore v.. Hensley*, 53 N.M. 308, 310, 207 P.2d 529, 530 (1949), the Court held that a private party may not seek mandamus to compel a district judge or district attorney to bring a defendant to trial, reasoning that, "[w]hile the relators here are the parents of the boy who was killed, yet it is the State of New Mexico which is the party beneficially interested." *See also Asplund*, 31 N.M. at 666, 249 P. at 1083 ("Whatever appellant's interest, it is but part of the public interest . . . . [A]s we have sought to show, that does not entitle the individual to resort to equity in his own name and right to enforce it."). The rule to be deduced from these cases is that the existence of a generalized duty that state officials owe to the people of the state as a whole, such as implementing the Criminal Code—or passing and signing lawful legislation—is not sufficient to authorize an enforcement action by a person seeking to serve as a "private attorney general." Rather, some additional authority is required. Plaintiffs point to no such additional authority under which they may serve as private attorneys general, and we therefore reject this argument.

{18} *State ex rel. Burg v. City of Albuquerque*, 31 N.M. 576, 249 P. 242 (1926) does not support Plaintiffs' position. In that case, this Court stated,

While there are exceptions, it is the general rule that mandamus may be issued to enforce the performance of a public duty

by public officers, upon application of *any citizen whose rights are affected in common with those of the public.* Such [a] person is "beneficially interested" in the enforcement of the laws.

31 N.M. at 584, 249 P. at 246 (italics and boldface type added). This case is distinguishable from *Burg* because there the plaintiff sought not just to vindicate the public interest in securing a referendum on a city ordinance, but also his own individual right to vote on the proposition at issue. *See id.* at 578–79, 586–87, 249 P. at 247. We have recognized that an individual's right to vote is a fundamental right. *See Wilson v. Denver,* 1998–NMSC–016, ¶¶ 27, 30, 125 N.M. 308, 961 P.2d 153. Thus, we interpret the "in common with" language in *Burg* to mean not that any citizen may enforce a shared, abstract duty owed to the public at large, but that only citizens whose individual fundamental rights are infringed "in common with" the individual rights of other citizens are entitled to sue for mandamus relief. Here, Plaintiffs have no individual, fundamental right in assuring that HB 399 comports with federal and state law. As such, we think this case is more like *Naramore* than *Burg;* although the plaintiffs in the former case no doubt were profoundly and tragically affected by their son's killing, it was for the state to pursue enforcement of the Criminal Code, not the plaintiffs.

{19} In an attack reminiscent of *Burg,* Plaintiffs allege that their personal interests in voting as both citizens and legislators have been infringed in that HB 399 "attempts to contract away the people's right of self-government and the state's police power over gambling for nine years." Plaintiffs premise this argument on a provision of HB 399 that declares: "This Compact shall be binding upon the State and Tribe for a term of nine (9) years from the date it becomes effective and may renew for an additional period." § 11–13–1 (under heading "Section 11(A)" therein). This argument is too speculative. Plaintiffs presented no evidence in the district court that any efforts have been undertaken to repeal or amend HB 399 by vote in the Legislature or by referendum at the polls, let alone evidence that the above provision has thwarted such efforts. Hence, we will not address the merits of this argument. *See* 55 C.J.S. *Mandamus* § 57b. (1998) ("Mandamus generally will not issue to enforce a right which is doubtful, inchoate, or subject to certain conditions."); *cf. State v. Jensen,* 1998–NMCA–034, ¶ 14, 124 N.M. 726, 955 P.2d 195 (recognizing that courts will not reach arguments that are "speculative and premature"); *City of Las Cruces v. El Paso Elec. Co.,* 1998–NMSC–006, ¶ 18, 124 N.M. 640, 954 P.2d 72 ("We avoid rendering advisory opinions.").

{20} Making his ruling on the issue of standing from the bench, the district judge in this case reasoned,

I also conclude that the more generalized argument of citizen standing—that the rights of the citizens to self-government has been infringed in some way, and that that grants standing in this case—is also unsupported by the law. Once again, I think that, if that were to be the case, that would, in effect, grant standing to any citizen to address any law. And I simply find no support for that [view].

Similarly, this Court concluded many years ago in *Naramore,*

If every dissatisfied prosecuting witness or the close relatives of a person who had been unlawfully killed, as they might believe, could go into court and procure a writ of mandamus to compel the district attorney and trial judge to proceed with a trial of a defendant who had been discharged, even though they believed the state did not have a case, endless confusion, waste of time and expense would follow.

53 N.M. at 311, 207 P.2d at 530–31. We find the reasoning of both the district court and the *Naramore* court persuasive. Hence, on all of the foregoing claims, where Plaintiffs have asserted only an abstract right owed to the people of the state as a whole, we affirm the district court's conclusion that Plaintiffs "do not have standing based upon direct and personal harm."

*Part Four: Standing and the Great Public Importance Doctrine*

{21} Plaintiffs correctly point out that where plaintiffs do not have standing due to direct and personal harm to their status as citizens, taxpayers, voters, or on any other grounds, this Court has occasionally granted standing under the doctrine of great public importance. However, the fact that a case involves a duty that state officials owe to the general public as a whole is not sufficient to show that the case involves an issue of great public importance. Recent cases in which this Court has granted standing under the great public importance doctrine have generally involved clear threats to the essential nature of state government guaranteed to New Mexico citizens under their Constitution—a government in which the "three distinct departments, ... legislative, executive, and judicial," remain within the bounds of their constitutional powers. N.M. Const. art. III, § 1. *See, e.g., State ex rel. Sandel v. New Mexico Pub. Util. Comm'n*, 1999–NMSC–019, ¶ 11, 127 N.M. 272, 980 P.2d 55 (holding that the commission's order exceeded its statutory authority and unlawfully intruded upon the province of the Legislature); *State ex rel. Taylor v. Johnson*, 1998–NMSC–015, ¶¶ 22–25, 125 N.M. 343, 961 P.2d 768 (holding that the Governor's actions encroached on constitutional prerogative of the Legislature to make "substantive law"); *Johnson*, 120 N.M. at 573, 904 P.2d at 22 ("The Governor may not exercise power that as a matter of state constitutional law infringes on the power properly belonging to the legislature."); *State ex rel. Clark v. State Canvassing Bd.*, 119 N.M. 12, 15, 888 P.2d 458, 461 (1995) (holding that Article XIX, Section 1 prohibits the Legislature from exceeding its authority by "logrolling" proposed constitutional amendments); *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 364, 524 P.2d 975, 980 (1974) (holding that, with executive veto power, "the Governor may not properly distort legislative appropriations or arrogate unto himself the power of making appropriations"). In such cases, this Court exercises

jurisdiction as a matter of "controlling necessity," *State ex rel. Owen v. Van Stone*, 17 N.M. 41, 47, 121 P. 611, 613 (1912), because the conduct at issue affects, in a fundamental way, " 'the sovereignty of the state, its franchises or prerogatives, or the liberties of its people,' " *Hutcheson v. Gonzales*, 41 N.M. 474, 492, 71 P.2d 140, 151 (1937) (quoting *Van Stone*, 17 N.M. at 46, 121 P. at 612).

{22} Issues of such constitutional moment are not present in this case. We note that the Arizona Supreme Court recently reached the same conclusion in a similar Indian gaming case. *See Sears*, 961 P.2d at 1020 ("Unlike those unique [Arizona] cases discussed above, this action does not present issues of such great public importance that we should waive standing."). Here, Plaintiffs do not dispute that HB 399 was duly passed by both houses of the Legislature and that the Governor duly signed the bill into law. For this reason and for the reasons we discuss below, we decline to recognize the district court's grant of standing to Plaintiffs under the great public importance doctrine.

{23} Plaintiffs next allege that HB 399's provision for revenue sharing between the gaming Tribes and Pueblos and the state amounts to a "bribe," and citing the Magna Carta, Plaintiffs contend that the Legislature and the Governor have engaged in a prohibited "sale of legal favors" by passing and signing HB 399 into law. Additionally, Plaintiffs broadly accuse the Governor of "conspiring or conniving" to establish casino gambling throughout New Mexico. Further, even though they seek the same relief granted by this Court in *Johnson*, Plaintiffs suggest that revenue sharing under HB 399 "infringe[s] the judicial power" because courts will refuse to "penalize the State" by "limit[ing] Indian gaming" through an adverse ruling.

{24} We agree with Plaintiffs that threats to the integrity of state government might very well justify an exercise of this Court's jurisdiction as a matter of controlling necessity when such threats affect, in a fundamental way, the state's definition of

itself as sovereign. In none of Plaintiffs' allegations, however, do they identify specific conduct by any member of the legislative, executive, or judicial branches of state government that is illegal or fraudulent. As Plaintiffs acknowledge, the Legislature "at any time may legalize or criminalize gambling." It appears that Plaintiffs' allegations result simply from a difference of opinion with the Legislature and the Governor over the legalization of Indian gaming. As we have said on many occasions, however, it is not the province of this Court "to question the wisdom, policy, or justness of legislation enacted by our Legislature." *Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 10, 122 N.M. 524, 928 P.2d 250; *see also* 55 C.J.S. *Mandamus* § 155 (1998) (noting that mandamus ordinarily will not lie for legislative actions "requiring the exercise of judgment and discretion"); Laurence H. Tribe, *American Constitutional Law* § 3–20, at 152–53 (2d ed.1988) (concluding that an individual legislator does not "have any special interest ... in challenging the constitutionality of a law duly passed over his or her objection"). Similarly, we will not second-guess the Governor's decision to sign or veto bills passed by the Legislature. *See State of New Mexico ex rel. American Fed'n of State, County and Mun. Employees v. Johnson*, 1999–NMSC–031, Vol. 38, No. 33, SBB 15 (order denying mandamus petition, citing separation of powers principles and stating that "[t]his Court cannot override the Governor's vetoes"). Thus, we decline Plaintiffs' invitation to transform the doctrine of great public importance into a justification for eviscerating the principle that a writ of mandamus "lies only to force a clear legal right against one having a clear legal duty to perform an act." *Brantley Farms*, 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763. Nor will we allow Plaintiffs' invocation of the great public interest doctrine to blind us to traditional standards of justiciability. *See Baker v. Carr*, 369 U.S. 186, 226, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (listing "common characteristics" used in determining "what constitutes a nonjusticiable 'political question'"). Plaintiffs' generalized insinuations of governmental wrongdoing do not set forth a clear legal duty to perform the actions they seek in this case, and Plaintiffs' oblique references to the Magna Carta and the people's right of self-government do not provide judicially manageable standards which the Court can utilize in order to determine the lawfulness of HB 399. We therefore view the foregoing claims as insufficient for review under the great public importance doctrine.

■ {25} Plaintiffs do not have standing to assert any of their remaining claims. Plaintiffs contend on behalf of the state that "no contracts were formed between the State and the tribes ... because there was no meeting of the minds on the essential terms of the contracts," and they further contend that many or most of the Tribes and Pueblos have breached the contracts by "not paying the revenues specified" under the gaming compacts negotiated pursuant to HB 399. As this Court noted in *Burg*, however, "'in cases where the state, as such, is directly interested as a party, the attorney general should apply for the writ, or in some manner signify his [or her] assent to the proceeding.'" 31 N.M. at 585, 249 P. at 246 (quoting with approval *State ex rel. Dakota Hail Ass'n v. Carey*, 2 N.D. 36, 49 N.W. 164, 165 (1891)). Here, the Attorney General not only has not applied for or assented to the writ sought by Plaintiffs, but in fact has been named as a defendant by Plaintiffs. As we have discussed, there is no basis for Plaintiffs to serve as private attorneys general, and our Rule 1–019 analysis precludes Plaintiffs from advancing claims that so heavily implicate the rights and duties of the Tribes and Pueblos under the gaming compacts when the Tribes and Pueblos cannot be joined as parties to the litigation. We are confident that the Attorney General can well represent the state on the foregoing claims raised by Plaintiffs, in her discretion.

■ {26} Finally, Plaintiffs argue both that HB 399 discriminates against non-Indian citizens and entities who want to engage in the business of casino gambling, contrary to Article II, Section 18 of the New Mexico Constitution, and also that HB 399 violates the constitutional right of Indian tribes and tribal enterprises to be free from state taxation under Article XXI, Section 2 of our constitution. While these rights may be per-

sonal in nature instead of merely abstract, they do not belong to Plaintiffs but to individual non-Indians who might be interested in casino gambling operations and to Indians who may view the revenue-sharing provisions of HB 399 as a tax. Citing *Doe v. Roman Catholic Church of the Archdiocese of Santa Fe, Inc.*, 1996–NMCA–094, 122 N.M. 307, 924 P.2d 273, Plaintiffs advance the broad proposition that "plaintiffs can assert the rights of third persons." That argument is unavailing in this case because Plaintiffs' evident opposition to all forms of legalized casino gambling is antithetical to the interests of the parties whom Plaintiffs seek to represent. *See id.* ¶ 34 (recognizing that "the fact that a person does not choose to litigate a personal right does not mean that any officious third party should be granted standing to litigate that right"); *see also New Mexico Right to Choose/NARAL v. Johnson*, 1999–NMSC–005, ¶ 14, 126 N.M. 788, 975 P.2d 841 (holding that physicians and reproductive health care providers had standing to assert the rights of their patients because, among other things, the physicians and health care providers "had a close relation to the Medicaid-eligible women whose rights they seek to assert in court").

*CONCLUSION*

{27} In sum, we decide this case in light of the precedents established in both *Srader* and *Johnson*. We conclude that the indispensability rule announced in *Johnson* does not apply to this case, and we reverse the district court's decision to confer standing on Plaintiffs based on great public importance. Further, *Johnson* does not alter our analysis of the Rule 1–019 factors in this case, and we conclude that the public policy articulated in *Srader* regarding the importance of tribal sovereign immunity must prevail here. Hence, we also reverse the district court's denial of Defendants' Rule 1–019 motions and require that this action be dismissed.

{28} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, SERNA, and MAES, JJ., concur.