This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MARCY BRITTON,**

Petitioner-Appellant,

v.                                    **NO. 34,283**

**BARBARA BRUIN, Director**
**Albuquerque Animal Welfare Department,**
**RICHARD BERRY, Mayor, City of Albuquerque,**

Respondents-Appellees,

and

**BEST FRIENDS ANIMAL SOCIETY,**

Intervenor-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Western Agriculture, Resource and Business Advocates, LLP
A. Blair Dunn
Alonzo Maestas
Albuquerque, NM

for Petitioner-Appellant

Nicholas H. Bullock, Assistant City Attorney
Albuquerque, NM

for Respondents-Appellees

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Donald A. DeCandia
Elizabeth A. Martinez
Sarah M. Stevenson
Albuquerque, NM

for Intervenor-Appellee

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}    This appeal concerns the City of Albuquerque's effort to control a large population of feral cats in its metropolitan area by trapping, neutering them, and then returning them to the location from whence they came. Petitioner Marcy Britton, a resident of Albuquerque, sought a writ of mandamus from the district court compelling Respondents, the mayor of Albuquerque, and the director of the Albuquerque Animal Welfare Department, to cease the practice. She appeals the district court's dismissal of her petition. We affirm.

**BACKGROUND**

{2}    NMSA 1978, Section 77-1-12 (2009) requires municipalities and counties to "make provision by ordinance for the seizure and disposition of dogs and cats running at large and not kept or claimed by any person on the person's premises; provided, however, that the ordinance does not conflict with the [Animal Sheltering Act, NMSA 1978, Sections 77-1B-1 through -12 (2007, as amended through 2015)]." The Animal

2

Sheltering Act defines "disposition" as "adoption of an animal; return of an animal to the owner; release of an animal to a rescue organization; release of an animal to another animal shelter or to a rehabilitator licensed by the [D]epartment of [G]ame and [F]ish or the United States [F]ish and [W]ildlife [S]ervice; or euthanasia of an animal[.]" Section 77-1B-2(E).

{3}     In line with its duty under Section 77-1-12 of the statute, the City of Albuquerque (the City) has adopted the Humane and Ethical Animal Rules and Treatment (HEART) Ordinance, Albuquerque, N.M., Rev. Ordinances ch. 9, art. II, §§ 9-2-1-1 through 9-2-8-1 (2006) (HEART Ordinance). The HEART Ordinance provides that "[a]n at large animal shall be seized and impounded if the owner is not available or if the owner continues to intentionally or negligently allow his or her animal to be at large." Section 9-2-4-3(D)(4) (capitalization in original omitted). Although the HEART Ordinance does not provide for the destruction of seized "at large" animals, it appears that impounded animals which are not adopted are typically destroyed by the Albuquerque Animal Welfare Department (AAWD). *See* HEART Ordinance § 9-2-8-1 (prohibiting euthanasia of "adoptable" animals for at least ten days after the City comes into possession of the animal).

{4}     The HEART Ordinance also prohibits cruelty to animals within city limits, *see* § 9-2-4-1, a crime which is classified as a misdemeanor or petty misdemeanor under

3

NMSA 1978, § 31-19-1(A), (B) (1984). The HEART Ordinance further states that "[a]ny person who relinquishes possession or control of an animal in a location where any reasonable person would know the animal has little chance of finding food, potable water, and shelter is guilty of cruelty." Section 9-2-4-2(I) (capitalization in original omitted).

{5}     Intervenor-Appellee, Best Friends Animal Society (the Society) is "a national nonprofit animal welfare organization . . . [that] partners with municipalities to promote pet adoption, low-cost spay and neuter programs, and community cats management[.]" From January 2012 to April 2014 the Society and the AAWD entered into a series of memoranda of understanding (MOUs). Under the MOUs, the Society (which uses its own funds and funds provided by PetSmart Charities) and the AAWD "cooperat[ed] on a project . . . known as the Partners for Cats Project," also known as the "Trap-Neuter-Return" (TNR) program.

{6}     The MOUs defined the entire City of Albuquerque as the "Target Area" and set out various goals for the TNR program. The overarching goal was "[t]o help heighten the status of community cats and promote non-lethal approaches to their management." More specifically, AAWD and the Society agreed to "reduce AAWD cat intake in [the] Target Area (compared to 2011 baseline of 8,009) by at least 10% . . . [and t]o increase AAWD cat live release rate in [the] Target [A]rea (compared to

4

2011 baseline of 5,132) by at least 35% by the end of the [TNR program]." The MOUs define "[l]ive release" as the total "cat intake" minus the "total [number] of adoptions, transfers without euthanasia as the final outcome, and returns to owner."

{7} In order to achieve these goals, the Society agreed to hire "Project Coordinators . . . who will work with AAWD on the implementation of the [TNR Program]." More importantly, the Society agreed to pay up to $50 per cat for "surgical sterilization and rabies vaccination" of feral cats. In turn, AAWD agreed to perform at its own expense "up to 500 spay/neuter surgeries of shelter cats before they are transferred to [the Society]," vaccinate shelter cats, and "[i]dentify which [shelter] cats are eligible for release[.]" The MOUs define eligibility for release as "[c]ats . . . identified as currently living outdoors, healthy, and of appropriate age . . . to be sterilized[.]" The MOUs also define cats which are "generally not eligible for release" as "owner-surrendered cats, unhealthy cats that cannot be treated, cats under age/weight for sterilization, and cats that do not appear to be cared for (i.e. starving, ill, or injured)[.]"

{8} Petitioner alleges that one result of the TNR program is that the City now no longer destroys feral cats as a matter of course. Reasonable minds differ about the TNR program's efficacy, to put the issue mildly. Proponents argue that over time the sterilization of feral cats will cause the feral cat population to decrease and that euthanasia does nothing to address the underlying cause of feral cat

populations—food supply. Opponents contend that the TNR program amounts to an abdication of the City's responsibility to control the feral cat population, which kills wild birds, damages private property, and otherwise makes a nuisance that burdens Albuquerque residents' quality of life. *See generally* Rick Nathanson, *One Giant Litter Box*, Albuquerque Journal (June 2, 2014), *available at* http://www.abqjournal.com/409480/news/residents-tire-of-yards-being-litter-boxes .html (summarizing the arguments in favor of the TNR program and describing Albuquerque residents' complaints).

{9}     Predictably, the controversy over the TNR program made its way to district court. On November 21, 2013, Petitioner sought a writ of mandamus[1] compelling Respondents to cease operation of the TNR program. Petitioner maintains that the TNR program is illegal because the "release" portion of the program involves "relinquish[ing] possession or control of an animal in a location where any reasonable person would know the animal has little chance of finding food, potable water, and shelter," which as noted above the HEART Ordinance classifies as "cruelty." HEART

---

[1]The petition sought a peremptory writ, which is a writ of mandamus that does not require notice to the responding party in circumstances where "the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it[.]" 1978 NMSA, § 44-2-7 (1884). As commentators have noted, "use of the peremptory writ [is] constitutionally suspect" under modern due process jurisprudence. Charles T. Dumars & Michael B. Browde, *Mandamus in New Mexico*, 4 N.M. L. Rev. 155, 162 (1974).

Ordinance § 9-2-4-2(I) (capitalization in original omitted). The district court issued an alternative writ ordering Respondents to show cause why it should not enjoin the TNR program. As well, the district court granted the Society's motion to intervene.

**{10}** Following a hearing, the district court denied the petition and quashed its alternative writ. The district concluded that even if the TNR program was illegal, other remedies were available to Petitioner short of the drastic remedy of mandamus. The court reasoned in the alternative that Albuquerque's feral cat population implicates public health and safety, and that "[u]nder State law, the City has the discretion, power, and authority to choose" any one of several possible approaches to handling the feral cat population. The district court found that the TNR program was one such permissible alternative. The district court additionally found that a writ of mandamus that seeks to prohibit official action (as opposed to compelling performance of an official duty) should only be issued to enjoin "violations of significant Constitutional rights[,]" and that petitioner had failed to allege that the TNR program violated any such right.

**STANDARD OF REVIEW**

**{11}** A writ of mandamus "may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; but though it may require an inferior

7

tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it cannot control judicial discretion." NMSA 1978, § 44-2-4 (1884). Under Section 44-2-4, mandamus is proper when a public official is under a duty to act and the duty leaves no room for the exercise of discretion—or in other words, the duty is "ministerial." *Witt v. Hartman*, 1970-NMSC-147, ¶ 2, 82 N.M. 170, 477 P.2d 608. Further, "[t]he writ shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law." NMSA 1978, § 44-2-5 (1884).

{12} A district court may also issue a writ of mandamus "to prohibit unlawful or unconstitutional official action." *State ex rel. King v. Lyons*, 2011-NMSC-004, ¶ 95, 149 N.M. 330, 248 P.3d 878. "In considering whether to issue a prohibitory mandamus, we do not assess the wisdom of the public official's act[;] we determine whether that act goes beyond the bounds established by the New Mexico Constitution." *Id.* Our Supreme Court has recently indicated that prohibitory writs should only be granted when an illegal official action implicates constitutional concerns. *See Am. Fed'n of State, Cty. & Mun. Emps. v. Martinez*, 2011-NMSC-018, ¶ 4, 150 N.M. 132, 257 P.3d 952 ("A writ of mandamus may be used in a prohibatory manner to prohibit *unconstitutional* official action." (emphasis added)).

{13} We review de novo the district court's interpretation of applicable statutes and constitutional provisions utilized in resolving a petition for a writ of mandamus. *See*

*FastBucks of Roswell, N.M., LLC v. King*, 2013-NMCA-008, ¶ 6, 294 P.3d 1287. However, we have interpreted the word "may" in Section 44-2-4 to permit a district court to deny a petition for a writ of mandamus for prudential reasons, especially in light of the fact that mandamus is an "extraordinary" remedy. *See FastBucks of Roswell, N.M., LLC*, 2013-NMCA-008, ¶ 7. When a district court declines to issue a writ of mandamus out of prudential concerns, we review for an abuse of that discretion. *Id.* ¶ 5.

**DISCUSSION**

{14}    Petitioner raises only one issue on appeal, contending that the district court erroneously concluded that the TNR program is not a "substantial violation" of the law. Respondents argue that we need not address this issue because Petitioner has waived any challenge to the district court's separately dispositive rationale that Petitioner had failed to establish an essential prerequisite to mandamus relief, namely that "there is [not] a plain, speedy and adequate remedy in the ordinary course of law" available to Petitioner. Section 44-2-5. We agree.

{15}    Petitioner's brief in chief does not attack the district court's rationale that mandamus was improper because Petitioner had an adequate remedy in the ordinary course of law. In her reply brief, the closest Petitioner comes to challenging this rationale is her one-sentence response to the City's waiver argument, which states that

"a situation where a government is willfully violating a law duly passed by the New Mexico Legislature is an 'extraordinary circumstance . . . where there is [no] plain, speedy and adequate remedy at law[.]' " (alterations in original). We find that this isolated reference to an independent, alternatively-asserted basis for the district court's ruling is insufficient for two reasons.

{16}    First, Petitioner did not make the argument in her brief in chief. Instead, Petitioner raises it for the first time in her reply brief. This Court does not consider arguments raised for the first time in a reply brief except when made in response to new arguments in an answer brief. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65; *see also* Rule 12-213(C) NMRA (stating in pertinent part that a reply brief "shall reply only to arguments or authorities presented in the answer brief"). Here, the district court invoked the availability of a plain, speedy, and adequate remedy at law as an independent basis for denying the application for a writ of mandamus. Accordingly, Petitioner bore the burden of challenging it in her brief in chief by citing authorities that refuted the district court's conclusion.

{17}    Second, we do not address "[i]ssues raised in appellate briefs which are unsupported by cited authority[.]" *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Petitioner cites *State ex rel. Coll v. Johnson*, 1999-NMSC-036, ¶ 12, 128 N.M. 154, 990 P.2d 1277 in support of the proposition she sets out for

the first time in her reply brief, namely that "a situation where a government is willfully violating a law duly passed by the New Mexico Legislature is an 'extraordinary circumstance . . . where there is [no] plain, speedy and adequate remedy at law[.]' " But *Johnson* merely quotes verbatim Section 44-2-5 in a paragraph summarizing the requirements for obtaining mandamus relief. *Johnson* does not commit any further analysis to Section 44-2-5, instead finding that mandamus relief in that case would be inappropriate on other grounds. *See Johnson*, 1999-NMSC-036, ¶¶ 12-13. "[W]here arguments in briefs are unsupported by cited authority, [we assume that] counsel[,] after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

**{18}** In any event, the plain meaning of Section 44-2-5 is that Petitioner must show that there is no "plain, speedy and adequate remedy in the ordinary course of law" even when the other requirements for mandamus relief are met. Section 44-2-5; *cf.* 55 C.J.S. *Mandamus* § 403 (2015) ("The general rule that the burden of proof is on the proponent of the issue applies on an application for a writ of mandamus."). Were that not the case, mandamus would become the default means of remedying official misconduct, not "a drastic remedy to be invoked only in extraordinary circumstances." *Johnson*, 1999-NMSC-036, ¶ 12 (internal quotation marks and citation omitted). Since Petitioner has waived any challenge to the district court's legal conclusion that there

11

is a plain, speedy and adequate remedy in the course of law such that mandamus is improper, we can assume without deciding that the TNR program was a serious violation of the law and still affirm the district court. *See FastBucks of Roswell, N.M., LLC*, 2013-NMCA-008, ¶¶ 15-16 (assuming for the purposes of argument that the respondent had acted illegally but affirming denial of application for mandamus where the petitioner had failed to demonstrate the unavailability of other adequate forums for redress of the claimed wrong). By doing so, we decline to address Respondents' other arguments in defense of the district court's judgment.

**CONCLUSION**

{19}    The district court's order denying Petitioner's application for a writ of mandamus is affirmed.

{20}    **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**

12

_____

**M. MONICA ZAMORA, Judge**

13